IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) | |
| Plaintiffs/Counterclaim-Defendants, | ) ) | |
| v. | ) ) | C.A. No. 13-08-RGA |
| HUAWEI TECHNOLOGIES CO., LTD., a Chinese corporation, FUTUREWEI TECHNOLOGIES, INC. D/B/A/ HUAWEI TECHNOLOGIES (USA), a Texas corporation, and HUAWEI DEVICE USA, INC., a Texas corporation, | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants/Counterclaim-Plaintiffs. | ) ) ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY AND EXPEDITED TRIAL ON FRAND COUNTERCLAIMS

-Of Counsel-
Stanley Young
Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065
(650) 632-4700

David W. Haller
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018
(212) 841-1057

Winslow Taub
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
apoff@ycst.com
jhiggins@ycst.com

*Attorneys for Huawei Technologies Co., Ltd.,
Futurewei Technologies, Inc., and Huawei
Device USA, Inc.*

DATED: February 11, 2013

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

I.      INTRODUCTION ........................................................................................................ 1

II.     NATURE AND STAGE OF PROCEEDINGS ............................................................ 3

III.    SUMMARY OF ARGUMENT .................................................................................... 3

IV.     STATEMENT OF FACTS ........................................................................................... 5

        A.      The Parallel ITC Proceeding................................................................................ 5

        B.      IDC's Obligation to License "Declared-Essential" Patents on FRAND
                Terms ................................................................................................................... 5

        C.      The Asserted Declared-Essential Patents............................................................. 6

        D.      Huawei's Counterclaims ...................................................................................... 7

        E.      Pre-Litigation License Negotiations .................................................................... 7

V.      ARGUMENT ............................................................................................................... 7

        A.      Huawei Is Entitled to a Judicial Determination of the FRAND Rate for
                IDC's Patents Before Being Subjected to an ITC Investigation............................ 9

        B.      Huawei Will Suffer Improper Prejudice in Defending the ITC Proceedings
                and Facing Exclusion Orders Unless The Court Rules on Huawei's
                FRAND Counterclaims........................................................................................ 15

                1.      IDC Improperly Seeks to Complete the ITC Proceedings Before a
                        FRAND Rate Can Be Declared. ........................................................... 15

                2.      Litigation of Huawei's FRAND Defenses in the ITC Does Not
                        Provide an Adequate Remedy................................................................ 16

        C.      Establishing a FRAND Rate Will Also Dispose of This Litigation and
                Other Related Actions.......................................................................................... 19

        D.      An Expedited Schedule Will Not Unfairly Prejudice IDC. ................................. 19

VI.     RELIEF SOUGHT...................................................................................................... 20

VII.    CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.*,
  No. 11-956-LPS, 2011 WL 5402667 (D. Del. Nov. 8, 2011)............................................3, 15

*Amado v. Microsoft Corp.*,
  517 F.3d 1353 (Fed. Cir. 2008)........................................................................3, 11

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ...........................................................12, 13, 17, 18

*Bio-Tech Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996)..................................................................................16

*Carborundum Co. v. Molten Med. Equip. Innovations, Inc.*,
  72 F.3d 872 (Fed. Cir. 1995).....................................................................................18

*Certain Elec. Devices, Including Wireless Commc'n Devices, Portable Music and Data
  Processing Devices, and Tablet Computers*,
  Inv. No. 337-TA-794, 2012 ITC LEXIS 2296 (Sept. 14, 2012)............................................16

*Cordis Corp. v. Boston Scientific Corp.*,
  No. 03-027-SLR, 2009 WL 3160270 (D. Del. Sept. 30, 2009) ..................................................3

*Kos Pharms. Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004).......................................................................................15

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*,
  299 F. Supp. 2d 370 (D. Del. 2004)................................................................................4

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ......................................................................................11

*Microsoft Corp. v. Motorola, Inc.*,
  854 F. Supp. 2d 993 (W.D. Wash. 2012)..................................................................4, 15, 17

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823JLR, 2012 U.S. Dist. LEXIS 170587 (W.D. Wash. Nov. 30, 2012)................11

STATUTES

19 U.S.C. § 1337(c) ....................................................................................................16

19 U.S.C. § 1337(d),(f) ...............................................................................................16

## I.   INTRODUCTION

Defendants Huawei Technologies Co., Ltd., Futurewei Technologies, Inc. and Huawei Device USA, Inc. (collectively "Huawei") request that this Court set an expedited schedule for discovery and trial as to the obligation of plaintiffs InterDigital Communications, LLC, InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. (collectively, "IDC") to license the asserted patents on fair reasonable and non-discriminatory ("FRAND") terms.  IDC is required to do so because it has declared that the asserted patents may be "essential" to certain third- and fourth-generation cellular communication standards.  In particular, Huawei seeks a determination of a FRAND rate so that the rate can be paid, which would resolve this and related actions in this Court and in the International Trade Commission.

Since the last time the parties appeared before the Court on this issue, a consensus is rapidly emerging among regulatory bodies and the federal courts that, when there is a dispute as to the FRAND rate for declared-essential patents, the accused infringer must be given the opportunity to accept a FRAND rate determined by a court or arbitrator, and that opportunity must be given before the patentholder can seek injunctive relief.  IDC has ignored these recent decisions in pursuit of leverage to force a non-FRAND license rate on Huawei: IDC is seeking injunctive relief in the International Trade Commission (ITC), on the same patents asserted in this litigation, without first allowing Huawei the ability to have a FRAND rate determined and then to accept the result of that determination.

The ITC lacks the jurisdiction even to declare a FRAND rate.  In addition, the ITC investigative staff has taken the position that, in ruling on FRAND-related affirmative defenses, the ITC need only consider whether the offers made in pre-litigation licensing discussions were "outrageously" high.  Thus the ITC will not provide any relief in the form of a FRAND license offer.  Only this Court, which has the authority to adjudicate Huawei's counterclaims and

provide declaratory relief, can give Huawei the opportunity to have a FRAND rate adjudicated for InterDigital's declared-essential U.S. patents and then to accept a license on FRAND terms, prior to being subjected to an injunction based on purported infringement. Once that rate is set in this case, Huawei will pay it, obviating any need for further proceedings, in any forum, about infringement, validity and other issues relating to those patents.

IDC is well aware of the inability of the ITC to provide the relief to which Huawei is entitled, and is hoping to press the investigation forward on a schedule that denies Huawei that opportunity. In a recent letter to the ITC, IDC has argued that the ITC investigation should proceed without regard for the FRAND counterclaims in this action because "the district court has to date taken no action on Huawei's just-filed counterclaims," and because IDC does not expect a ruling from this Court until "years [in the future], especially if appeals are taken." IDC's determined effort to slow down a FRAND determination in this lawsuit while forging ahead in the ITC injunctive proceeding is precisely the kind of hold-up that the FTC, the DOJ, and the courts have condemned.

Huawei seeks through this motion to establish a schedule for this case that provides a FRAND determination in sufficient time to have an effect on the ongoing ITC investigations. Huawei is also planning to move the ITC to stay the most recently filed investigation, and reserves the right to seek in this Court an injunction halting the ITC proceedings should it become necessary to do so.

In addition, an adjudication of a FRAND rate will dispose of the remaining claims in this action and the prior action before this Court. Huawei will accept and pay the judicially determined FRAND rate for IDC's portfolio of U.S. patents declared essential to cellular

standards.  Once a license with FRAND terms is consummated, there will no longer be any case or controversy regarding the patents asserted in this lawsuit and the prior lawsuit.

Finally, Huawei is seeking expedited discovery and trial on the FRAND issues without prejudice to IDC's ultimate ability to proceed with litigating its liability claims in this Court should it become necessary to do so.  Rather, Huawei believes that judicial economy will be best served by having the FRAND-related discovery, hearing and ruling bifurcated and scheduled in advance of liability discovery and trial in this case.

## II.    NATURE AND STAGE OF PROCEEDINGS

This lawsuit was filed on January 2, 2013.  IDC alleges that Huawei infringes U.S. Patent Nos. 7,190,966, 7,286,847 and 7,941,151 (the "asserted patents"). (D.I.#1)  On January 24, 2013 Huawei filed an answer and asserted counterclaims, including a claim for relief in the form of a declaration of the FRAND royalty for IDC's United States patents that have been declared essential to 3G and LTE 4G cellular standards. (D.I. #8)  IDC has yet to respond to Huawei's counterclaims.

IDC moved for a 30-day extension to respond to Huawei's counterclaims on February 1, 2013. (D.I. #14)  Huawei opposed the motion for extension due to the need for prompt adjudication of the FRAND-related counterclaims described in this motion, and because IDC has long been aware of nearly identical claims and defenses in related litigation involving Huawei. (D.I. #15)

## III.   SUMMARY OF ARGUMENT

1.      District Courts are "afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them." *Cordis Corp. v. Boston Scientific Corp.*, No. 03-027-SLR, 2009 WL 3160270, at *2 (D. Del. Sept. 30, 2009) (*citing Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008)).

2.       Courts have used this discretion to expedite discovery and trial during the pendency of a parallel ITC proceeding.  *Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.*, No. 11-956-LPS 2011 WL 5402667, at *2 (D. Del. Nov. 8, 2011) (expediting trial on patent ownership issue).

3.       More specifically, it is proper to hold a "mini-trial" on FRAND issues prior to adjudication of patent infringement and invalidity, and to stay the imposition of injunctive relief during the process of determining a FRAND rate.  *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1002-03 (W.D. Wash. 2012) (setting expedited summary judgment schedule on FRAND issues and, thereafter, a mini-trial to dispose of all remaining FRAND issues).  *See also Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 370, 372 (D. Del. 2004) (bifurcating antitrust counterclaims from patent claims and phasing early antitrust discovery and early motions for summary judgment).

4.       Expedited proceedings on the FRAND counterclaims are necessary here.  Unless this Court rules on the FRAND counterclaims expeditiously, and certainly before liability is adjudicated in the ITC proceedings between the parties, Huawei will face the threat of injunctive relief in the form of an ITC exclusion order without having had the opportunity to accept an offer at a judicially determined FRAND rate—which would be inconsistent with IDC's FRAND obligations and would present exactly the anticompetitive scenario that federal regulators are so concerned about.  Even now, prior to any final determination in the ITC proceedings, the ongoing and irreparable harm being inflicted by the threat of an injunction warrants a rapid resolution of the FRAND issue by this Court.

5.       This Court can and should set a FRAND rate, and not defer to the ITC, because the ITC has no jurisdiction to rule on Huawei's contractual and equitable counterclaims nor on

its request for declaratory relief.  To avoid the irreparable harm to Huawei being caused by the threat of an ITC exclusion order, adjudication of the FRAND rate should take place as soon as possible.

## IV.   STATEMENT OF FACTS

### A.   The Parallel ITC Proceeding

On the same day that IDC filed its patent-infringement complaint in this action, it also filed a complaint in the ITC alleging that Huawei infringes the same three patents.  *Certain Wireless Devices with 3G and/or 4G Capabilities and Components Thereof*, Inv. No. 337-TA-868 (Jan. 2, 2013) [hereinafter "the parallel ITC proceeding"].  The administrative law judge in the ITC has set February 4, 2014 as the date he will issue his Initial Determination, and June 4, 2014 as the "target date" for completion of the investigation, including Commission review.  *Id.* Order 4 (Feb. 6, 2013).[1]

### B.   IDC's Obligation to License "Declared-Essential" Patents on FRAND Terms

During the period when it filed the applications leading to the asserted patents, IDC participated in several Standard Setting Organizations ("SSO"), including the European Telecommunications Standards Institute ("ETSI") and the 3rd Generation Partnership Project ("3GPP").  *See* Taub Decl., Ex. 1 (September 14, 2009 declaration to ETSI that the '966 and

---

[1] As the Court is no doubt aware, this lawsuit and the parallel ITC proceeding are only the most recent in a series of disputes between Huawei and IDC.  There is also separate ongoing litigation in this Court and the ITC, and there was an action in the Delaware Chancery Court.  *See* Case No. 1:11-cv-00654-RGA (stayed litigation in this Court); *Certain Wireless Devices with 3G Capabilities and Components Thereof*, Inv. No. 337-TA-800 (ongoing ITC investigation); *Huawei Technologies Co. Ltd. v. Interdigital Technology Co.*, C.A. No. 6974-CS  (Chancery Court litigation).  As discussed below, although FRAND-related issues were raised in those other matters as well, the law regarding IDC's FRAND obligations has been clarified, providing clear guidance that this Court should determine a FRAND rate before any injunctive relief is made available.  Also, Huawei brought an unfair competition lawsuit against IDC in China, in which the Chinese court recently set a FRAND rate for InterDigital's declared-essential Chinese patents, which rate Huawei is attempting to pay.  Huawei's counterclaims here ask this Court to make the same determination for IDC's United States 3G and 4G LTE declared-essential patents.

'847 patents are essential to UMTS) at 12; *id.* Ex. 2 (October 31, 2011 declaration to ETSI that

the '151 patent is essential to LTE).  To participate in those SSOs, IDC was required to agree to

policies governing the disclosure and licensing of Intellectual Property Rights ("IPRs").  *See id.*

As part of those agreements, IDC made explicit commitments to disclose any IPR that may be

"essential" to the standards under development, and to state whether it will grant licenses to

those declared-essential patents on FRAND terms.  *See* Taub Decl., Ex. 3 (ETSI IPR) Clauses

4.1, 6.1.

      **C.**     **The Asserted Declared-Essential Patents**

      IDC alleges that all three of the patents asserted against Huawei in this case are essential

to the practice of cellular standards developed by ETSI and 3GPP.  In particular, IDC has

declared to ETSI that U.S. Patent Nos. 7,190,966 and 7,286,847 may be essential to the UMTS

standard—a so-called "third-generation" cellular standard—and that U.S. Patent No. 7,941,151

may be essential to the LTE standard—a "fourth-generation" cellular standard.  *See* Taub Decl.,

Ex. 1 (September 14, 2009 declaration to ETSI that the '966 and '847 patents are essential to

UMTS) at 12; *id.* Ex. 2 (October 31, 2011 declaration to ETSI that the '151 patent is essential to

LTE).

      In addition, IDC's complaint in the parallel ITC proceeding alleges that Huawei infringes

the asserted patents solely because Huawei imports devices that operate in cellular systems that

support those standards.  Complaint ¶ 7.45 ("On information and belief, Huawei tests or operates

the accused products in the United States by using them in one or more 3G WCDMA, 3G

CDMA2000, or 4G systems and performing the claimed methods, thereby directly infringing any

claims requiring such operation."); *see generally id.* ¶¶ 7.44–7.47.  The claim charts

accompanying the ITC complaint cite only to documents describing the cellular standards, and

do not rely on any analysis of the actual operation of Huawei's products. *See* Taub Decl., Exs. 4-8 (claim charts for asserted patents).

### D.      Huawei's Counterclaims

In response to IDC's complaint in this action, Huawei has asserted six counterclaims related to IDC's obligation to license its patents on FRAND terms. Central to this motion is Huawei's sixth counterclaim, which asks the Court for "a declaratory judgment determining an appropriate FRAND royalty for IDC's United States 3G and LTE 4G patents that have been declared essential to a standard used by any of the products accused in the earlier filed case or this action." (D.I. #8) ¶¶ 78–81.

### E.      Pre-Litigation License Negotiations

Although the parties have engaged in extensive licensing negotiations, IDC's offers to Huawei are not FRAND. IDC has made a number of licensing offers to Huawei since 2009. *See* (D.I. #8) ¶¶ 18-21. All of these offers, however, are discriminatory and disadvantageous to Huawei in relation to IDC's prior licenses to Huawei's major competitors.

Huawei previously attempted to commence proceedings to establish a FRAND rate in the Delaware Court of Chancery and in this Court, but IDC vigorously opposed these efforts. *See Huawei Technologies Co. Ltd., v. Interdigital Technology Co.*, C.A. No. 6974-CS; *InterDigital et al. v. Huawei Technologies et al.*, C.A. No. 11-cv-00654-RGA (D. Del.) [Order of March 2, 2012]. Huawei Technologies sued IDC in China to set a FRAND rate there for IDC's Chinese patents, which IDC also vigorously opposed, but the Chinese court in fact did recently set a FRAND rate for those Chinese patents.

## V.      ARGUMENT

The scheduling dispute in this motion flows from a fundamental disagreement as to what a patent holder must do before seeking injunctive relief based on patents that have been declared

essential to an industry standard.  IDC claims that a patentholder may seek injunctive relief against a willing licensee through an ITC investigation without any preliminary judicial[2] determination of the FRAND royalty rate for the patents asserted.

But recent regulatory and judicial decisions overwhelmingly support Huawei's position that IDC may not seek such injunctive relief without first giving a willing licensee like Huawei a chance to obtain a FRAND rate determination through a judicial process separate from the injunctive proceeding itself.  In particular, the Federal Trade Commission, the District Court for the Western District of Washington, the Department of Justice, and the United States Patent and Trademark Office have all concluded that a patentholder (such as IDC) is not entitled to seek injunctive relief (such as an exclusion order by the ITC) until a willing licensee (such as Huawei) has first been offered and rejected a judicially determined FRAND rate.[3]  Here, as mentioned, Huawei has already agreed to accept and pay such a rate.

The only way to comply with the law and provide Huawei with the opportunity to accept a judicially determined FRAND rate is to determine that rate now and allow Huawei to pay it before the ITC reaches a final determination and Huawei is faced with an imminent exclusion order.  The Court should therefore grant Huawei's motion for an expedited discovery and trial schedule for its FRAND counterclaims.

---

[2] A rate determined through arbitration would also satisfy the standard set forth in recent decisions, but for purposes of this brief Huawei will use "judicially determined" to refer to both alternatives.

[3] It would also be proper for IDC to seek injunctive relief if Huawei refused to submit the FRAND issues to a court or arbitrator at all.  Those circumstances do not apply here, where Huawei is actively seeking a U.S. patent FRAND rate ruling by this Court and has already sought and obtained a rate in the Chinese court for IDC's Chinese patents.

A.     **Huawei Is Entitled to a Judicial Determination of the FRAND Rate for IDC's Patents Before Being Subjected to an ITC Investigation.**

Over the past year, federal regulators and courts increasingly have recognized that a patentholder may only seek injunctive or exclusionary relief in the ITC <u>after</u> litigation to set a FRAND rate is complete and, even then, only if the potential licensee refuses to accept the rate that has been set.  Litigation of FRAND-related affirmative defenses in the ITC does not satisfy the patentholder's obligation to honor its FRAND commitments.

The Federal Trade Commission (FTC) recently concluded an investigation of Google and its subsidiary Motorola (collectively, "Google"), another company holding declared-essential patents, and found that it is unlawful under Section 5 of the FTC Act for a patent holder to seek injunctive relief against a willing licensee using patents subject to FRAND commitments.  *See In the Matter of Motorola Mobility LLC and Google Inc.*, FTC File No. 121- 0120, Analysis of Proposed Consent Order to Aid Public Comment.[4] *See* Taub Decl., Ex. 10. The FTC found that Google's efforts to obtain injunctions were unlawful because they create a risk of patent "hold-up":  the ability for the holder of patents essential to an industry standard to obtain royalties that depend on the value of the standard as a whole, and not on the value of the specific patents.  *Id.* at 2.  This is possible because an injunction against a feature that is necessary for use of a standard prevents use of the entire standard; the cost of "switching" to a completely different technology platform may be prohibitive.  *Id.*

IDC's behavior with respect to Huawei is for all relevant purposes identical to Google's behavior as documented in the Consent Order.  IDC, like Google, participated in the ETSI standard-setting process and declared that its patents may be essential to the standards under development.  *See* Consent Order at 3; *cf.* [cite to declarations for patents].  Also like Google,

---

[4] *Available at* http://ftc.gov/os/caselist/1210120/130103googlemotoroaanalysis.pdf.

IDC "promised to license its patents essential to these standards on FRAND terms, inducing ETSI . . . to include its patents in cellular . . . standards." *See* Consent Order at 3; *cf.* [cite to IDC's FRAND commitment]. And like Google, IDC "filed patent infringement claims at the ITC where the only remedy for patent infringement is an exclusion order." *See* Consent Order at 3. The FTC explained why this behavior is unlawful when carried out by a company that is bound by FRAND commitments: "Because of the ITC's remedial structure, filing for an exclusion order before the ITC on a FRAND-encumbered SEP significantly raises the risk of patent hold-up in concurrent licensing negotiations because an exclusion order may be entered by the ITC before a FRAND rate is reached." *Id.*

In the Consent Order, the FTC sets forth the process that a patent holder like Google, which holds patents declared essential to an industry standard, must follow before filing a complaint in the ITC. It is proper for such a patent holder to do so only after the accused infringer has refused an offer to obtain an adjudicated FRAND rate, or has refused to accept that rate once it is finally established through litigation or arbitration. The FTC stated:

> Under this Order, before seeking an injunction on FRAND-encumbered SEPs, Google must: (1) provide a potential licensee with a written offer containing all of the material license terms necessary to license its SEPs, and (2) provide a potential licensee with an offer of binding arbitration to determine the terms of a license that are not agreed upon. Furthermore, if a potential licensee seeks judicial relief for a FRAND determination, Google must not seek an injunction during the pendency of the proceeding, including appeals.

*See id.* at 6. It bears emphasis that, as explained in the Order, Google breached its FRAND commitments by <u>seeking</u> injunctive relief in the ITC before a judicial determination of the FRAND rate was complete.

This is a resounding clarification in the law as compared to the time when Huawei last appeared before this Court seeking a judicial determination of the FRAND rate for IDC's patents. In that prior litigation, IDC successfully argued that there was no need for this Court to

determine a FRAND rate because the ITC would consider whether IDC's offer to Huawei during

pre-litigation licensing negotiations was a FRAND offer.  *See* IDC's Brief in Response for

Partial Lift of Stay at 16, 1:11-cv-00654-RGA, D.I. 41 ("The affirmative defenses raised by

Huawei in the ITC put at issue the question of whether InterDigital has in fact offered a license

to Huawei on FRAND terms . . . .  Determining these issues in the first instance at the ITC . . .

will at a minimum streamline the issues involved in this case, and may end up being

dispositive.").  This Court adopted that reasoning in its order denying Huawei's motion to lift the

stay of its FRAND counterclaims:

> If, as Defendants allege, the Plaintiff has breached a contract, then the ITC will
> not order exclusion.  On the other hand, if Plaintiff has acted in accordance with
> its contractual obligations, then the Defendants (assuming various other factors
> are met) would be subject to an order of exclusion.  I believe the reasonableness
> of whatever FRAND offers, if any, have been made by Plaintiff will be decided in
> the ITC proceeding.

Civil Action No. 11-654-RGA, D.I. #71, at 1 n.1.  But the Google Consent Order makes clear

that litigation of Huawei's affirmative defenses in the ITC does not satisfy IDC's FRAND

obligation because the threat of an exclusion order may force Huawei to negotiate a license rate

in excess of the FRAND rate before the ITC even reaches a decision:  "filing for an exclusion

order before the ITC on a FRAND-encumbered SEP significantly raises the risk of patent hold-

up in concurrent licensing negotiations because an exclusion order may be entered by the ITC

before a FRAND rate is reached."  Analysis of Consent Order at 3 (emphasis added).

Other courts and agencies have recently come to the same conclusion set forth in the

Google Consent Order.  The Western District of Washington ordered a "mini-trial" on FRAND

issues before considering the merits of Motorola's patent infringement claims.  *Microsoft Corp.*

854 F. Supp. 2d at1002–03  ("to move the adjudication process forward with respect to the

RAND-based issues in this case, the court intends to schedule a mini-trial on any unresolved

RAND-based issues").[5]  In addition, to protect Microsoft's right to obtain a license at a FRAND

rate without the coercive threat of a patent-infringement injunction, the court enjoined Motorola

from enforcing such an injunction entered in Germany, pending resolution of the FRAND issues.

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 U.S. Dist. LEXIS 170587 (W.D.

Wash. Nov. 30, 2012) (injunctive relief is inappropriate, including in Germany, given pending

adjudication of FRAND terms); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir.

2012) (affirming district court injunction against effort in Germany to enjoin use of patents,

pending determination of FRAND terms by district court:  "Implicit in such a sweeping promise

[to license on FRAND terms] is, at least arguably, a guarantee that the patentholder will not take

steps to keep would-be users from using the patented material, such as seeking an injunction, but

will instead proffer licenses consistent with the commitment made.").[6]

Judge Posner reached the same conclusion, denying Motorola the opportunity to seek

injunctive relief on patents declared to be essential to industry standards unless and until Apple

actually refused to pay a FRAND rate.  *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 914–

15 (N.D. Ill. 2012) ("I don't see how, given FRAND, I would be justified in enjoining Apple

from infringing the '898 unless Apple refuses to pay a royalty that meets the FRAND

requirement.").  As the court noted, the unfairness flows from the declaration that the patents are

essential—i.e., that a company such as Huawei cannot so much as import or sell a cellular

telephone without infringing the patents' claims:  "How could it be permitted to enjoin Apple

---

[5] The terms "RAND" (Reasonable And Non-Discriminatory) and "FRAND" (Fair, Reasonable And Non-Discriminatory) are often used interchangeably in other decisions involving alleged standards-essential patents.

[6] Courts in other jurisdictions have also accepted the need to establish a judicially defined FRAND rate.  In litigation between Huawei and InterDigital in China, Huawei just obtained an expeditious determination of a FRAND rate for InterDigital's Chinese declared-essential patents, which Huawei intends to pay.

from using an invention that it contends Apple <u>must</u> use if it wants to make a cell phone with

UMTS telecommunications capability—without which it would not be a cell <u>phone</u>." *Id.* at 914

(emphasis in original).  The court agreed with the FTC that the step of seeking an exclusion order

is improper because negotiation under the "threat of an exclusion order" gives the patentholder

improper leverage.  *Id.* (discussing Consent Order with approval).  Finally, the court expressly

rejected the position that IDC has taken here—that IDC is entitled to bring a suit for injunctive

relief if it concludes that Huawei has not made reasonable counteroffers during license

negotiations:

> Motorola counters that Apple's refusal to negotiate with it after rejecting its initial
> offer of a 2.25 percent royalty warrants injunctive relief; by opting not to take a
> license ex ante, it argues, Apple should lose the FRAND safe harbor.  But Apple's
> refusal to negotiate for a license (if it did refuse—the parties offer competing
> accounts, unnecessary for me to resolve, of why negotiations broke down) was
> not a defense to a claim by Motorola for a FRAND royalty.  If Apple said no to
> 2.25 percent, it ran the risk of being ordered by a court to pay an equal or even
> higher royalty rate, but that is not the same thing as Motorola's being excused
> from no longer having to comply with its FRAND obligations.  Motorola agreed
> to license its standards-essential patents on FRAND terms as a *quid pro quo* for
> their being declared essential to the standard. FTC Statement on the Public
> Interest, *supra*, at 2.  It does not claim to have conditioned agreement on
> prospective licensees' making counteroffers in license negotiations.

*Id.*  Judge Posner's conclusion in *Apple v. Motorola* is identical to Huawei's position here that

IDC is obligated to abstain from seeking injunctive relief unless and until Huawei has had the

opportunity to accept a judicially determined rate.

In the same vein, the United States Department of Justice (DOJ) and the United States

Patent and Trademark Office (USPTO) have announced in a recent policy statement that an ITC

exclusion order should not issue until any litigation to set a FRAND rate is complete and the

putative licensee refuses to pay the set rate.  *See* DOJ & USPTO, Policy Stmt. on Remedies for

Standards-Essential Patents Subject to Voluntary F/RAND Commitments, at 7 (Jan. 8, 2013)

(*available at* [www.justice.gov/atr/public/guidelines/290994.pdf](http://www.justice.gov/atr/public/guidelines/290994.pdf)) ("An exclusion order may still

be an appropriate remedy . . . [f]or example, if a putative licensee refuses to pay what has been determined to be a F/RAND royalty or refuses to engage in a negotiation to determine F/RAND terms."). *See* Taub Decl., Ex. 12.

Finally, the FTC has emphasized the risk of allowing a patentholder to seek an exclusion order on patents declared to be essential to a standard and strongly urged the ITC to consider that harm in deciding whether to issue exclusion orders. *See Certain Gaming and Entm't Consoles, Related Software, and Components Thereof*, 337-TA-752, Third Party United States Federal Trade Commission's Statement on the Public Interest at 1 (June 6, 2012) ("[W]e are concerned that a patentee can make a RAND commitment as part of the standard setting process, and then seek an exclusion order for infringement of the RAND-encumbered SEP as a way of securing royalties that may be inconsistent with that RAND commitment.").

In sum, based on the standard of conduct set forth in the FTC Consent Order and multiple recent District Court and Court of Appeals opinions, IDC has already breached its FRAND obligations by filing its complaints in the ITC.  Huawei has not refused a judicial determination of the FRAND rate for IDC's patents or refused to accept such a rate.  To the contrary, Huawei has consistently and affirmatively asked for a judicially determined rate in this Court and in the Delaware Chancery Court so it could be accepted in respect of the prior investigation.  At the same time, Huawei sought and obtained a FRAND rate in China with respect to IDC's Chinese patents and is attempting to pay that.  And Huawei again seeks through this motion to obtain prompt litigation of a FRAND rate for IDC's U.S. patents.  Given that Huawei indisputably is a willing licensee, all of IDC's attempts to obtain injunctive relief are improper.

**B.** **Huawei Will Suffer Improper Prejudice in Defending the ITC Proceedings and Facing Exclusion Orders Unless The Court Rules on Huawei's FRAND Counterclaims.**

**1.** **IDC Improperly Seeks to Complete the ITC Proceedings Before a FRAND Rate Can Be Declared.**

IDC has compounded the breach of its FRAND obligations by opposing all of Huawei's efforts to obtain a declaration of a FRAND rate, and by arguing in the parallel ITC proceeding that the ITC should exclude Huawei's products regardless of the outcome of Huawei's counterclaims in this lawsuit:

> There is no reason to delay investigation of InterDigital's complaint at this juncture, when the district court has to date taken no action on Huawei's just-filed counterclaims. Further, the adjudication of a district court case may take years, especially if appeals are taken. Delaying institution for such a lengthy period of time would not be consistent with Section 337's provision for "expeditious adjudication" of ITC complaints.

Taub Decl., Ex. 9 (January 29, 2013 Letter from B. Reiser to L. Barton, Acting Secretary to the ITC). Similarly, with respect to the earlier filed ITC proceeding, IDC successfully argued to this Court that Huawei's FRAND counterclaims should remain stayed until the investigation is complete.

The strategy that IDC is pursuing—pushing for the completion of ITC investigations independent of a determination of the FRAND rate by this Court—causes the precise harm noted by the FTC, the DOJ, and multiple district courts. Specifically, even though Huawei is a willing licensee, IDC's ITC proceedings seek to prohibit the importation and sale of Huawei's products. As a result, as of October 28, 2013, the ITC could issue an exclusion order in the first ITC action, and a second exclusion order could follow in the later action in June 2014. If an exclusion order issues in one or both of the ITC proceedings, Huawei would be shut out of a highly competitive and rapidly evolving market, and would lose its competitive position including loss of goodwill and important customer relationships and market share. *See Kos*

15

*Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (losses of reputation, trade and good will constitute irreparable injury).

An expedited adjudication of the FRAND rate in this Court—in advance of an ITC exclusion order—is needed to alleviate the harm to Huawei.  It is appropriate for the Court to exercise its "broad discretion" to control and manage its dockets, to schedule an expedited trial on the FRAND counterclaims in advance of the litigation on the merits both here and in the ITC. *See Advanced Micro Devices, Inc.*, 2011 WL 5402667, at *2  (expediting trial on patent ownership issue where ITC proceeding pending); *Microsoft Corp.*, 854 F. Supp. 2d at 1002-03 (holding a "mini-trial" on FRAND issues prior to adjudication of patent infringement and invalidity).

### 2. Litigation of Huawei's FRAND Defenses in the ITC Does Not Provide an Adequate Remedy.

Litigation of Huawei's affirmative defenses in the ITC is an insufficient remedy for IDC's FRAND violations.  As already mentioned, the FTC has expressly found that litigation of FRAND defenses in an ongoing ITC case does not satisfy a patentee's FRAND obligations because the patentee already has obtained improper leverage in licensing negotiations when it requests an exclusion order by filing its ITC complaint: "[f]iling for an exclusion order before the ITC on a FRAND-encumbered SEP significantly raises the risk of patent hold-up <u>in concurrent licensing negotiations</u> because an exclusion order may be entered by the ITC before a FRAND rate is reached."  Analysis of Consent Order at 3.

Moreover, the ITC lacks jurisdiction to hear counterclaims, and as a result cannot issue a declaration of the FRAND rate at all.  See 19 U.S.C. § 1337(c) (counterclaims must be removed to District Court); 19 U.S.C. § 1337(d),(f) (ITC remedies limited to exclusion and cease and desist orders); *Bio-Tech Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) (ITC

has no power to grant other relief).  Because the ITC cannot declare a FRAND rate, Huawei

cannot obtain the opportunity to "refus[e] to enter a license agreement for [IDC's]  FRAND-

encumbered SEPs on terms set for the parties by a court or through binding arbitration," which is

a precondition for seeking an exclusion order under the FTC's framework.  *See* Analysis of

Consent Order at 7.

Also, under existing ITC precedent, and absent reversal by the ITC, IDC's FRAND

commitments themselves may not be a defense to an exclusion order—although we argue they

should be.  In a recent ITC Initial Determination, the administrative law judge held that FRAND

commitments "do not preclude the imposition of Section 337 remedies in investigations in which

the Commission determines that that authorizing statute is violated."  *See Certain Elec. Devices,*

*Including Wireless Commc'n Devices, Portable Music and Data Processing Devices, and Tablet*

*Computers*, Inv. No. 337-TA-794, Initial Determination, 2012 ITC LEXIS 2296, at *666-67

(Sept. 14, 2012) (*Comm'n review pending*).

Finally, the investigative staff within the ITC has recently taken the position that the ITC

need not determine a FRAND rate at all when considering affirmative defenses based on a patent

holder's failure to offer a FRAND license.  The staff, when advocating a process for determining

"whether an offer complies with a FRAND undertaking" recommended that "it will usually not

be necessary to determine an exact royalty in order to decide whether an offer is reasonable—a

reasonable royalty is a hypothetical construct, and the determination of what is 'reasonable' will

be upheld unless it is 'so outrageously high or so outrageously low as to be unsupportable as an

estimation of a reasonable royalty.'"  *See* Taub Decl., Ex. 11 (Brief of the Office Of Unfair

Import Investigations on Issues Under Review and On Remedy, The Public Interest, and

Bonding, *In the Matter of Certain Mobile Electronic Devices, Including Wireless Commc'n*

*Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794 (Dec. 20, 2012) (emphasis added)).  The proposed "outrageously high" standard completely fails to address what the FTC expects during the course of a judicial determination of a FRAND rate, i.e., an <u>actual</u> determination of a rate that can be accepted by the accused infringer.

Thus, the ITC cannot and will not adjudicate the issue of the appropriate FRAND rate, and under current precedent, has not yet recognized FRAND commitments *per se* as a defense to an exclusion order.  Huawei instead must seek a determination of the FRAND rate, in order to accept an actual license at that rate, which would moot the ongoing ITC proceeding under well-established law regarding the need for a case or controversy.  This action is the only active litigation between the parties in which a court has the authority to adjudicate Huawei's counterclaims and provide the required declaratory relief.

IDC's view, which was expressly rejected by the FTC in the Google Consent Order and which was the basis for this Court's March 2, 2012 Order in Case No. 1:11-cv-00654-RGA, is that Huawei can just wait to see if the ITC agrees with it on the FRAND issue.  According to IDC, if Huawei is right, then there is no harm because no exclusion order will issue (and if IDC is right, then there will be an injunction).  But under that view, the pressure on Huawei to agree to a rate that is higher than FRAND is too great.  Given the obligation to license, the leverage of a <u>threatened</u> injunction is illegitimate.  The Google Consent Order, Judge Posner's ruling in the *Apple v. Motorola* case, and the Ninth Circuit's decision in *Microsoft v. Motorola* make it clear that an essential patent holder may not use the threat of an injunction to coerce a license agreement out of a defendant, without giving the defendant a chance to obtain a separate judicial ruling on the FRAND issue and then to pay the adjudicated rate *prior to the injunction proceeding even being commenced*.  This Court should expedite a FRAND rate determination,

18

which the ITC lacks the jurisdiction to do, in order to enforce IDC's FRAND obligation and prevent the irreparable harm that the FTC and the courts have decried.

### C.   Establishing a FRAND Rate Will Also Dispose of This Litigation and Other Related Actions.

Huawei believes that judicial economy will be best served by having the FRAND-related discovery, hearing and ruling take place in advance of liability discovery and trial.  Resolution of Huawei's FRAND counterclaims, and this Court's timely declaration of an appropriate FRAND royalty, should moot both pending ITC proceedings.  A judicial declaration would allow Huawei to avoid any exclusion order that might otherwise issue in the ITC proceedings by paying the FRAND royalty amounts for IDC's U.S. essential patents in exchange for a license from IDC. *See, e.g.*, *Carborundum Co. v. Molten Med. Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (license is a defense to patent infringement).

An adjudication of the FRAND rate will also dispose of the remaining claims in this action and in the earlier District Court case against Huawei.  Huawei will pay the judicially determined FRAND rate for IDC's 3G and 4G LTE United States portfolios.  Once a license with FRAND terms is consummated, there will no longer be any case or controversy regarding any purported patent infringement as the patents will be licensed.  *See Apple Inc. v. Motorola*, 869 F. Supp. 2d 901, 915 (N.D. Ill. 2012) ("A FRAND royalty would provide all the relief to which [patent holder] would be entitled if it proved infringement. . . .").

### D.   An Expedited Schedule Will Not Unfairly Prejudice IDC.

The benefits of prompt adjudication far outweigh any burdens of expedited proceedings for all parties.  A prompt FRAND determination should result in a license and save all parties significant expenditures in the various litigations now underway.  IDC also does not manufacture or sell its own products, but rather is engaged solely in the business of licensing its patents.

IDC's expectations, from the outset were, and continue to be, merely monetary. Those monetary expectations are limited, as well, by IDC's commitment to accept a FRAND royalty that is appropriate in amount given the numerous other patents that are also incorporated into the relevant standards. Further, discovery as to the FRAND counterclaims should not be unusually expensive or onerous. Much of the relevant discovery has already taken place in earlier proceedings in the ITC.

Moreover, to the extent that IDC suffers any prejudice as a result of expedited litigation of Huawei's FRAND counterclaims, that prejudice is not improper. To the contrary, as the authorities discussed above make clear, IDC is obligated under its FRAND commitments to submit to an early judicial determination of the FRAND rate—the very relief that Huawei seeks.

By contrast, as described above, the harm to Huawei is significant if there is not a prompt adjudication of the terms of their FRAND license.

## VI.    RELIEF SOUGHT

Huawei seeks a schedule for discovery and trial on its FRAND-related counterclaims that will afford Huawei the opportunity to accept a FRAND license rate at the earliest opportunity, and in any case before the date on which an exclusion order may become effective in the ITC. That date, for the earlier filed ITC investigation, is December 28, 2013 (after the statutory Presidential review period for an ITC exclusion order). Huawei respectfully asks that the Court, upon granting this motion, set a scheduling conference that will permit the setting of a schedule consistent with the relief to which Huawei is entitled.

## VII.   CONCLUSION

Because of the ongoing harm to Huawei posed by the ITC investigations, and the lack of prejudice to IDC if an expedited schedule is set, Huawei respectfully requests that the Court grant its motion for expedited discovery and adjudication of its FRAND counterclaims.

DATED:  February 11, 2013

-Of Counsel-

Stanley Young
Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065
(650) 632-4700

David W. Haller
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018
(212) 841-1057

Winslow Taub
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
_____
Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
apoff@ycst.com
jhiggins@ycst.com

*Attorneys for Huawei Technologies Co., Ltd.,
Futurewei Technologies, Inc., and Huawei
Device USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, Esquire, hereby certify that on February 11, 2013, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Neal C. Belgam, Esquire
> Melissa N. Donimirski, Esquire
> Proctor Heyman LLP
> 300 Delaware Avenue, Suite 200
> Wilmington, DE 19801
> (302) 472-7300
> *nbelgam@proctorheyman.com*
> *mdonimirski@proctorheyman.com*

I further certify that on February 11, 2013, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following:

> Ron E. Shulman
> Latham & Watkins
> 140 Scott Drive
> Menlo Park, CA 94025
> *Ron.Shulman@lw.com*
>
> Maximilian A. Grant
> Bert C. Reiser
> Latham & Watkins
> 555 Eleventh Street, N.W., Ste. 1000
> Washington, DC 20004
> *Max.Grant@lw.com*
> *Bert.Reiser@lw.com*

David S. Steuer
Michael B. Levin
Maura L. Rees
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
*dsteuer@wsgr.com*
*mlevin@wsgr.com*
*mrees@wsgr.com*

YOUNG CONAWAY STARGATT
&  TAYLOR, LLP

/s/ *Adam W. Poff*

Martin S. Lessner (No. 3109)
Adam Wyatt Poff (No. 3990)
Monté T. Squire (No.4764)
Rodney Square
1000 North King Street
Wilmington, DE 19801
mlessner@ycst.com
apoff@ycst.com
msquire@ycst.com

*Attorneys for Defendants Huawei*
*Technologies Co. Ltd. And Futurewei*
*Technologies, Inc.*