IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERDIGITAL COMMUNICATIONS, :
INC., a Delaware corporation, :
INTERDIGITAL TECHNOLOGY :
CORPORATION, a Delaware corporation, :
IPR LICENSING, INC., a Delaware :
corporation, and INTERDIGITAL :
HOLDINGS, INC., a Delaware corporation, :
:
        Plaintiffs, :
:     C.A. No. 1:13-cv-00008-RGA
      v. :
:
HUAWEI TECHNOLOGIES CO., LTD., a :    **JURY TRIAL DEMANDED**
Chinese corporation, FUTUREWEI :
TECHNOLOGIES, INC. D/B/A HUAWEI :
TECHNOLOGIES (USA), a Texas :
corporation, and HUAWEI DEVICE USA, :
INC., a Texas corporation, :
:
        Defendants. :

## INTERDIGITAL'S ANSWERING BRIEF IN OPPOSITION TO MOTIONS TO EXPEDITE FRAND LICENSING COUNTERCLAIMS

PROCTOR HEYMAN LLP
Neal C. Belgam (# 2721)
E-mail: nbelgam@proctorheyman.com
Melissa N. Donimirski (#4701)
E-mail: mdonimirski@proctorheyman.com
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300

Counsel for Plaintiffs InterDigital Communications,
Inc., InterDigital Technology Corporation, IPR
Licensing, Inc., and InterDigital Holdings, Inc.

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
Michael A. Ladra
E-mail: Mike.Ladra@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
(202) 637-2200

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

WILSON SONSINI
GOODRICH & ROSATI
Larry L. Shatzer
E-mail: lshatzer@wsgr.com
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
(202) 973-8800

Dated: February 28, 2012

# TABLE OF CONTENTS

INTRODUCTION .............................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS AND FACTUAL BACKGROUND ........... 2

ARGUMENT ..................................................................................................................... 4

    I.      The Court Has Broad Discretion to Decline to Expedite a Case or Portion
          of a Case........................................................................................................... 4

    II.     The Courts and the ITC Have Not Altered Course by Expediting FRAND
          License Issues to be Resolved Before Patent Issues. ........................................... 6

    III.    The Counterclaims Seeking a Declaration of a FRAND Rate are Unripe
          and Legally Flawed.......................................................................................... 12

    IV.    Huawei's and ZTE's Claims of Irreparable Injury Have Already Been
          Rejected by this Court and Do Not Support the Unusual Relief Requested......... 13

    V.     Expedition Is Not Warranted In Light of the Procedural Posture of These
          Actions and the Related Actions........................................................................ 14

CONCLUSION................................................................................................................. 16

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012
 U.S. Dist. LEXIS 181854 (W.D. Wis. Oct. 29, 2012) ............................................................. 10

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416931
 (W.D. Wis. Nov. 2, 2012) ................................................................................................... 10, 11

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5943791
 (W.D. Wis. Nov. 28, 2012) ...................................................................................................... 11

*Apple, Inc. v. Motorola, Inc.*, 869 F. Supp.2d 901 (N.D. Ill. 2012) ................................................ 6

*BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581
 (D. Del. 2004) ............................................................................................................................. 4

*Beatrice Foods Co. v. FTC*, 540 F.2d 303 (7th Cir. 1976) ............................................................. 8

*Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519 (D. Del. 2002) ....................................................... 5

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ...................................................... 6, 12

*Giammargo v. Snapple Beverage Corp.*, No. 13845, 1994 WL 672698
 (Del. Ch. Nov. 15, 1994) ........................................................................................................... 6

*Greenfield v. Caporella*, 1986 WL 13977 (Del. Ch. Dec. 3, 1986) ................................................ 5

*Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 WL 4478477
 (D. Del. Sept. 26, 2011) ............................................................................................................. 4

*Microsoft v. Motorola*, 854 F. Supp.2d 993 (W.D. Wash. 2012) .................................................. 6

*Microsoft v. Motorola*, No. C10-1823-JLR, 2013 WL 454268
 (W.D. Wash. Feb. 7, 2013) ......................................................................................................... 6

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562
 (D. Del. 2009) ........................................................................................................................... 12

*Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2009 WL 1509103
 (Del. Super. May 22, 2009) ................................................................................................... 8-10

*SenoRx, Inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 394128
 (D. Del. Jan. 30, 2013) ............................................................................................................... 5

*Sepracor Inc. v. Dey L.P.*, Case No. 06–113–JJF, 2010 WL 2802611
(D. Del. Jul. 15, 2010)................................................................................................................. 4

*In re Tri Star Pictures, Inc.*, No. 9477, 1989 WL 997177
(Del. Ch. Oct 2, 1989)................................................................................................................. 6

*United States v. Lane Labs-USA, Inc.*, 324 F. Supp.2d 547, 578 (D.N.J. 2004) ............................ 8

*Wand Equity Portfolio II L.P. v. AMFM Internet Holdings, Inc.*,
No. 18162, 2001 WL 167720 (Del. Ch. Feb. 7, 2001) ............................................................. 6

*WebXchange Inc. v. Dell Inc.*, Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485
(D. Del. Dec. 30, 2009)............................................................................................................... 5

*In re Yahoo! Inc. S'holders Litig.*, No. 3561-CC, 2008 WL 2627851
(Del. Ch. June 16, 2008) ............................................................................................................. 5

## STATUTES

28 U.S.C. § 1659............................................................................................................... 1, 3, 15

## RULES

Fed. R. Civ. P. 16............................................................................................................. 1, 14, 16

Fed. R. Civ. P. 42(b) ................................................................................................................... 4

## INTRODUCTION

Both this Court and the Delaware Court of Chancery previously rejected Huawei and ZTE's argument that counterclaims seeking the setting of a "FRAND rate" should go forward on an expedited track and *before* the issues of patent infringement and validity are decided. On the present motions to expedite, Huawei and ZTE again make the same arguments. Nothing material has changed: not the relief requested, not the parties' positions, and not the state of the law.

It still makes no sense, and turns judicial efficiency and economy on its head, to attempt to hold a trial on what could be analogized to the damages phase of a patent case before liability is determined. It is still impractical to ask a Court to attempt to set a "FRAND rate" without adjudicating defendants' challenges to patent infringement, validity, and essentiality. It remains improper to seek a purely hypothetical and advisory opinion in the form of an expedited "FRAND rate" determination, while the counterclaimants maintain their ability to withdraw their request, and refuse to pay, in the event their other defenses are successful.

Finally, the motion to expedite itself is premature. First, it is unclear at this juncture whether other defendants in the related cases (including Nokia and Samsung) will invoke the automatic stay under 28 U.S.C. § 1659. Second, the Court cannot fairly be asked to set an expedited schedule, requiring counterclaims to be tried before the affirmative claims in a case, until those counterclaims have survived a motion to dismiss. Rushing headlong into discovery on claims that are deficient as a matter of law is not judicially efficient. For this reason, the Court should not reverse its prior Oral Order denying an expedited Rule 16 conference before the pleadings are closed. *See* February 1, 2013 Oral Order (unnumbered on docket).

## NATURE AND STAGE OF THE PROCEEDINGS AND FACTUAL BACKGROUND

On January 2, 2013, InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. (collectively "InterDigital"), filed four actions for patent infringement in this Court against: Huawei Technologies Co., Ltd., Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA), Huawei Device USA, Inc. (collectively "Huawei") (C.A. No. 13-00008-RGA); ZTE Corporation, and ZTE (USA) Inc. (collectively "ZTE") (C.A. No. 13-cv-00009-RGA); Nokia Corporation, a Finnish corporation and Nokia Inc., a Delaware corporation (collectively "Nokia") (C.A. No. 1:13-cv-00010-RGA); and Samsung Electronics Co., Ltd., a Korean corporation, Samsung Electronics America, Inc., a New Jersey corporation, and Samsung Telecommunications America, LLC, a Delaware corporation (collectively "Samsung") (C.A. No. 1:13-cv-00011-RGA).[1]  These cases against Huawei and ZTE assert infringement of three patents related to 3G and 4G wireless communication technology.[2]  Huawei filed its Answer and Counterclaims on January 24, 2013. (D.I. #8).  ZTE filed its Answer and Counterclaims on January 31, 2013.  (D.I. #7).

Huawei and ZTE each asserted six counterclaims relating to their assertions about alleged FRAND commitments made by InterDigital (the "FRAND Counterclaims").  Although FRAND obligations are applicable only to "essential patents" that are **necessarily infringed** by a manufacturer of standardized products, defendants also have asserted defenses and counterclaims seeking to have the patents in suit declared **not infringed** as well as invalid and unenforceable.

---

[1]      Also on January 2, 2013, InterDigital asserted claims in the ITC against each of these defendants relating to the patents at issue in this action.

[2]      The case against Samsung asserts the same three patents asserted against Huawei and ZTE in this action, along with four additional patents that were previously asserted against Huawei and ZTE in the action filed in July 2011.  The case against Nokia asserts one of the three patents asserted against Huawei and ZTE.

Nokia and Samsung each requested and received extensions of 60 days to respond to the Complaint. (D.I. #7; D.I. #8). Nokia filed its response to the Complaint on February 28, 2013. Samsung's response is due April 24, 2013. Defendants have until approximately March 6, 2013 to elect to invoke the mandatory stay of this action under 28 U.S.C. § 1659, as they did in the previous action between the parties. *See* C.A. No. 1:11-cv-00654 (RGA) (Oct. 10, 2011 Joint Motion to Stay Pursuant to 28 U.S.C. § 1659 (D.I. #19); Oct. 12, 2011 Order Granting Joint Motion to Stay (D.I. # 24)).

On February 1, 2013, InterDigital moved for an order extending the time to respond to the Counterclaims (D.I. #14). The parties had agreed to an interim extension allowing InterDigital until the hearing to respond to the Counterclaims. (D.I. #20). On February 28, 2013, InterDigital's motion was granted. (D.I. #15).

On February 11, 2013, ZTE and Huawei filed their motions "to Expedite Proceedings for the Declaration of FRAND License Terms." (D.I. #9, 10; D.I. #16, 17). Through these motions, Huawei and ZTE seek to accelerate only the FRAND Counterclaims and have them tried on an expedited schedule before the remainder of the case. They seek this relief in order to obtain a decision on the FRAND Counterclaims before the ITC, and this Court, rule on the patent issues before them. For the reasons set forth in this Answering Brief, InterDigital opposes the motions.

## ARGUMENT

### I.   The Court Has Broad Discretion to Decline to Expedite a Case or Portion of a Case.

In support of their motions to bifurcate and expedite the FRAND Counterclaims to be tried before the rest of the case, Huawei and ZTE identify no precedent in which a court has granted relief and ordered a trial in the manner they suggest. There is no reason for this Court to be the first.

When considering a motion for expedited discovery, this Court has applied a good cause/ reasonableness standard. *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 WL 4478477, at *4-8 (D. Del. Sept. 26, 2011). The standard requires the court to assess "the actual circumstances of each case, as well as consideration of certain factors such as a pending preliminary injunction hearing." *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004); *Kone*, 2011 WL 4478477, at *6. Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

Under Rule 42(b), a district court "has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. . . . Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice [and] conserve judicial resource . . . . In deciding whether one trial or separate trials will best serve the above factors the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *Sepracor Inc. v. Dey L.P.*, Case No. 06–113–JJF, 2010 WL 2802611, at *3 (D. Del. Jul. 15, 2010) (denying bifurcation and concluding that potential for overlap in presentation of evidence weighed against

4

bifurcation) (citing *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002); *see also SenoRx, Inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 394128, at *1 (D. Del. Jan. 30, 2013) (denying motion to bifurcate and request to bifurcate discovery after finding that bifurcation would not conserve judicial resources).

The party moving for bifurcation has the burden of establishing that it is appropriate. *Id.* at *1; *see also WebXchange Inc. v. Dell Inc.*, Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485, at *2 (D. Del. Dec. 30, 2009) (noting that movant's motion to bifurcate was based on assumption that it would succeed in its defense and finding that bifurcation would not promote judicial efficiency). Although the Court has discretion in deciding whether or not to bifurcate a case, bifurcation "remains the exception rather than the rule." *Id.* at *2 (citation omitted); *SenoRx*, 2013 WL 394128, at *2 (". . . the Court agrees that it is fair to characterize bifurcation as 'the exception, not the rule' in civil cases, including patent cases.").

The Delaware Court of Chancery has developed a considerable body of law on requests for expedition, owing to its national prominence for handling corporate matters that may require truly expedited proceedings. That court also uses caution in granting requests for expedition, in part to avoid imposing the substantial burdens of accelerated proceedings on the court and on parties where it is not warranted. *See, e.g., In re Yahoo! Inc. S'holders Litig.*, No. 3561-CC, 2008 WL 2627851, at *1 (Del. Ch. June 16, 2008). Consequently, the court "does not set matters for an expedited hearing or permit expedited discovery unless there is a showing of good cause why that is necessary." *Greenfield v. Caporella*, 1986 WL 13977, at *2 (Del. Ch. Dec. 3, 1986). The Court will order expedited proceedings only if Plaintiff can demonstrate *both*: (1) "a sufficiently colorable claim" *and* (2) "a sufficient possibility of a threatened irreparable injury, as would justify imposing on defendants and the public the extra (and sometimes substantial) costs

5

. . ." *Giammargo v. Snapple Beverage Corp.*, No. 13845, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994); *Wand Equity Portfolio II L.P. v. AMFM Internet Holdings, Inc.*, No. 18162, 2001 WL 167720, at *2 (Del. Ch. Feb. 7, 2001). Where the allegations are legally deficient or facially lack merit, as is the case here, expedition would "inflict [] an injustice upon the parties and waste[] the resources of the Court" and should thus be denied. *In re Tri Star Pictures, Inc.*, No. 9477, 1989 WL 997177, at *1 (Del. Ch. Oct 2, 1989).

## II.      The Courts and the ITC Have Not Altered Course by Expediting FRAND License Issues to be Resolved Before Patent Issues.

Huawei and ZTE fail to cite any law establishing that FRAND license issues, in particular, should receive expedited treatment in a case that raises many related issues, such as patent infringement and validity. In the *Microsoft v. Motorola* case (which does not even involve the ETSI standards at issue here), the court addressed patent infringement issues during the course of the litigation and did not stay the rest of the case to consider only FRAND issues first. *Microsoft v. Motorola*, No. C10-1823-JLR, 2013 WL 454268 (W.D. Wash. Feb. 7, 2013) (order adjudicating summary judgment motion regarding patent invalidity *before* issuing decision from "mini trial" on FRAND issues); *see also Microsoft v. Motorola*, 854 F. Supp.2d 993, 1003 (W.D. Wash. 2012). Huawei and ZTE's reliance on the *Apple v. Motorola* case from Illinois is also unfounded: even aside from the different facts in that case, it does not address expedited or bifurcated proceedings, but rather addresses the standards for issuing injunctions under the Supreme Court's *eBay* decision. *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp.2d 901, 910, 914-15 (N.D. Ill. 2012) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).

Nor has the ITC ever ruled that its investigations should take a back seat to FRAND-related counterclaims filed in parallel federal district court cases. Indeed, upon the filing of the ITC investigation at issue, Huawei formally requested that the Commission delay or decline

institution due to the FRAND issues Huawei has raised in this case. *See* Crompton Declaration ("Crompton Decl."),[3] Ex. 1 (Jan. 28, 2013 Letter from Huawei to ITC). The ITC did not grant Huawei's request, and the ITC investigation has been formally instituted and is moving forward. Having lost that initial request to delay the ITC investigation, Huawei and ZTE recently moved to stay the investigation in favor of this case. (D.I. #9, 10; D.I. #16, 17). The motion to stay in the ITC remains pending, although Huawei and ZTE cited no precedent for the ITC ever granting a stay in these circumstances.

Unable to cite any law supporting their position, Huawei and ZTE instead rely primarily on a proposed settlement agreement between Google/Motorola and the Federal Trade Commission as authority for the proposition that a patent holder may only seek injunctive relief after litigation to set a FRAND rate is complete. Huawei Mot. at 9-11 (D.I. #17 ); ZTE Mot. at 13-14 (D.I. #10). According to Huawei, the proposed consent decree (which has not even been entered yet) "is a resounding clarification in the law." Huawei Mot. at 10 (D.I. #17). Putting aside that the Google/Motorola situation is inapposite in a number of ways, Huawei and ZTE are simply wrong in their characterizations of the Google/Motorola settlement. An administrative consent decree is not law. It is an agreement between third parties who have no relationship to this action, and is not precedent binding on this (or any other) Court. That Google/Motorola may have chosen to agree with the FTC to undertake certain obligations is not a basis to adjudicate subsequent cases. In the consent agreement, Google/Motorola expressly denied liability, and denied the allegations of the FTC's complaint, which have never been tested in a court of law.[4] *See* Crompton Decl., Ex. 2 (FTC Agreement Containing Consent Order). Consent decrees are

---

[3]     The Declaration of Dawn Kurtz Crompton is being filed herewith.

[4]     *Available at* http://www.ftc.gov/os/caselist/1210120/130103googlemotorolaagree.pdf

not legal determinations, and have no precedential weight even in the context where they arose (FTC administrative proceedings under Section 5 of the FTC Act), much less in the very different context of this action. *United States v. Lane Labs-USA, Inc.*, 324 F. Supp.2d 547, 578 n.17 (D.N.J. 2004) (administrative consent decrees are "by their very nature consensual, and carry no precedential weight"); *Beatrice Foods Co. v. FTC*, 540 F.2d 303, 314 (7th Cir. 1976) ("The entering of a consent decree, however, is not a decision on the merits and therefore does not adjudicate the legality of any action by a party thereto. Nor is a consent decree a controlling precedent for later Commission action.").

Indeed, not only does the law disfavor bifurcating and expediting the types of claims raised by Huawei, courts faced with these issues have decided that such FRAND claims should instead be stayed or dismissed. For example, in the *Rembrandt* case, the Delaware Superior Court was attempting to adjudicate a claim to determine a RAND license while parallel patent litigation was going on. *Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2009 WL 1509103, at *1 n.6 (Del. Super. May 22, 2009). In the state action, the parties both sought declaratory judgments (via affirmative claims and counterclaims) concerning the patentee's RAND obligations with respect to patents allegedly essential to the ATSC standard. The court became increasingly frustrated when the parties repeatedly changed their positions depending on how issues were decided in the patent litigation. *Id.* at *1. The court ultimately stayed the RAND claims pending resolution of the federal court's patent claim construction ruling, which would, among other things, bear directly on whether the patents at issue were actually essential to the ATSC standard. *Id.* at *1, 6.

The court in *Rembrandt* issued the stay of the RAND claims after coming to the conclusion that "the parties have used this action principally as a device to gain strategic

advantages in related multi-district federal patent litigation," and that "[p]ositions taken here come and go with the changing tides of the federal litigation." *Id.* at *1. In particular, the patent defendant continually changed its position on whether the patent on which it sought a RAND license was or was not "essential." *Id.* at *2. When the court questioned whether the dispute was ripe for adjudication, given that it was unclear whether Harris would actually pay any royalties to the extent the patent was not essential, Harris allayed this concern by stating "Give us the terms of the license, Your Honor, and we will comply with them." *Id.* at *2 n.12. The case went forward on that basis, and in order to avoid issuing an illusory or advisory opinion, the Court held that any royalties ordered to be paid as a RAND license would not be subject to refund based on subsequent developments in the patent litigation. *Id.* at *2. Thereafter, however, when a ruling in the patent case suggested that the patent might be invalid or not infringed, Harris informed the court that it would indeed attempt to recoup license fees if the patent were found invalid or not infringed. *Id.* at *4. Thus, the court concluded, a trial in the matter would be "nothing but an exercise." *Id.*

After experiencing the disruptive effects of conducting the action in the shadow of the federal patent litigation, the *Rembrandt* court decided to enter a stay. *Id.* at *6. The stay avoided "duplicative actions . . . that if allowed to proceed simultaneously will present the distinct possibility of not only inconsistent, but irreconcilable rulings." *Id.* at *5 (internal citations and quotations omitted). A ruling in the patent case that the patent was not essential "would be inconsistent with a decision of this Court in which it presumed that the [patent-at-issue] is essential to the ATSC standard, granted Harris a license to the [patent-at-issue] on RAND terms, and ordered Harris to pay royalties on their products." *Id.* As the court further noted, "it is

hardly an irrelevant consideration to a busy court that its work may quickly be rendered moot by relief granted in an already pending suit between the same parties." *Id.* (citation omitted).

Similarly, the Western District of Wisconsin recently dismissed Apple's claims seeking to determine a "FRAND rate" for a license to purported standards-essential patents. *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416931 (W.D. Wis. Nov. 2, 2012). Although ZTE relies on an earlier order in that case in which the court found that specific performance would be an appropriate remedy,[5] ZTE fails to mention that the judge in that case subsequently reversed herself and held that specific performance was actually *not* warranted. *Id.* at *1.

In that case, the litigation had proceeded all the way to the eve of trial, when plaintiff Apple (represented by Covington & Burling, the same firm representing Huawei here) suddenly took the position at the pretrial conference that it would only pay an adjudicated FRAND rate if it was less than $1/unit, and reserved the right to contest infringement and validity of the patents at issue. Consequently, the judge determined that Apple's claims should not go forward:

> [I]t has become clear that Apple's interest in a license is qualified. In its response to Motorola's motion for clarification on the specific performance issue, Apple states that it will not commit to be bound by any FRAND rate determined by the court and will not agree to accept any license from Motorola unless the court sets a rate of $1 or less for each Apple phone. In other words, if Apple is unsatisfied with the rate chosen by the court, it "reserves the right to refuse and proceed to further infringement litigation." Despite its position, Apple maintains that it is entitled to specific performance in the form of the court determining what a FRAND rate is for Motorola's patents. At the final pretrial conference, I asked Apple to explain why it believed the court should determine a FRAND rate even though the rate may not resolve the parties' licensing or infringement disputes. I questioned whether it was appropriate for a court to undertake the complex task of

---

[5]   ZTE Mot. at 12 (D.I. #10), citing *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 U.S. Dist. LEXIS 181854, at *11-13 (W.D. Wis. Oct. 29, 2012).

> determining a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties.

*Id.* at *1 (internal citations omitted). The court decided it would be inappropriate to proceed under these circumstances, and dismissed the FRAND claims asserted by Apple. *Id.* at *3; *see also Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, 2012 WL 5943791 (W.D. Wis. Nov. 28, 2012).

Huawei and ZTE may seek to distinguish these cases by arguing that, unlike the parties in *Rembrandt* and *Apple* who said they were willing to pay a FRAND rate but didn't actually mean it, Huawei and ZTE **really and truly** intend to be bound by the results of a FRAND rate determination. In reality, however, nothing prevents Huawei and ZTE from later changing their position if events in the other pending actions make it expedient for them to do so, just like the alleged infringers in these other cases. As the counterclaimants, Huawei and ZTE can always modify the relief they seek or even withdraw their claims entirely – once they have accomplished their goal of delaying the adjudication of the patent infringement claims, as they seek to do via this motion, and via their motion to stay the parallel ITC investigation. The hard-won experience of other courts in this situation vividly illustrates that parties seeking a "FRAND rate" can and will change their positions on what they want adjudicated and the extent to which they are willing to actually pay the determined FRAND compensation. Indeed, in the prior proceedings before this Court, Huawei waffled considerably on its position about the circumstances under which it would pay a court-determined FRAND rate, and can be expected to do so again here in

the future if given the opportunity.[6]  Consequently, rather than expediting and bifurcating such

claims, it would be far more reasonable to stay or dismiss them.

### III.  The Counterclaims Seeking a Declaration of a FRAND Rate are Unripe and Legally Flawed.

As will be more fully explained in InterDigital's motion to dismiss, the counterclaims are

legally unsound for numerous reasons.  As set forth above, other courts in this situation have

dismissed or stayed similar claims, because they are fundamentally not ripe for adjudication, and

do not present a case or controversy, but instead seek advisory opinions.  Federal courts therefore

lack jurisdiction over such claims, or at a minimum should decline to exercise declaratory

judgment jurisdiction as a discretionary matter.  *See Principal Life Ins. Co. v. Lawrence Rucker*

*2007 Ins. Trust*, 674 F. Supp. 2d 562, 565 (D. Del. 2009) (noting that for declaratory judgment

jurisdiction, conflict must not be nebulous or contingent, nor seek a hypothetical opinion).

Moreover, to the extent Huawei and ZTE seek specific performance, which is a form of

injunctive relief, their allegations do not meet the four-factor test in *eBay* to establish that

issuance of an injunction would be appropriate.  *See generally eBay*, 547 U.S. at 388.

In addition, the FRAND Counterclaims seek a declaration of the terms of a FRAND

license, only one term of which would be the royalty rate applicable to particular infringing

products.  The FRAND Counterclaims, fairly construed, are not a simple request for the court to

decide a single royalty rate, but rather would require the Court to create complete patent license

---

[6]      In the prior action, even when directly asked whether Huawei would actually pay the "FRAND rate" it asks to be set, Huawei hedged, including conditional language and never answering directly and unequivocally.  For example, at the hearing on its motion to lift the stay in the prior action, Huawei described the "FRAND rate" to be set by the court as something that "we could pay."  *See* Crompton Decl., Ex. 3 (March 2, 2012 Hr'g Tr. (CA No. 11-654-RGA)) at 19.  When the District Court asked Huawei to confirm that any rate that was set, if affirmed by the Federal Circuit, was something that Huawei would "immediately" pay, Huawei's response was still conditional and highly ambiguous: "*If Your Honor gives us the rate that we asked for in Count VI*, yes, we would do that." *Id.* at 42 (emphasis added).

agreements out of whole cloth, with terms that were never agreed to by the parties. It is not generally the function of courts to act as substitutes for negotiations of private parties, and the complexities of the undertaking proposed by Huawei and ZTE are simply overwhelming.

Moreover, it appears that the FRAND Counterclaims in this case were compulsory counterclaims in the earlier *InterDigital v. Huawei* case, No. 11-cv-654-RGA. Huawei and ZTE expressly seek relief in 'this case concerning a FRAND rate for the patents asserted in Case No. 11-cv-654-RGA, and in fact sought to assert these same counterclaims in that case. If Huawei's and ZTE's counterclaims are to be raised at all, they should be raised in the prior action where they are compulsory. Huawei and ZTE should not be permitted to do an end-run around the Court's prior order declining to lift the stay in that case to allow them to pursue their counterclaims by asserting essentially the same counterclaims in this action.

For these reasons, among others, InterDigital will be moving to dismiss the FRAND Counterclaims. Because Huawei and ZTE's counterclaims are legally defective and therefore should not proceed at all, the Court certainly should not grant their motion to expedite and prioritize those counterclaims.

## IV. Huawei's And ZTE's Claims of Irreparable Injury Have Already Been Rejected by this Court and Do Not Support the Unusual Relief Requested.

Huawei and ZTE argue that expedition should be granted because of the irreparable harm that will allegedly result if their FRAND Counterclaims are not adjudicated immediately. Huawei Mot. at 16; ZTE Mot. at 9. However, both this Court and the Court of Chancery have heard Huawei's claims of irreparable injury and rejected them. There is nothing new about Huawei and ZTE's arguments concerning irreparable harm, and certainly nothing that would justify the extraordinary relief of trying this case in reverse order. *See* Crompton Decl., Ex. 3;

13

*id.*, Ex. 4 (June 11, 2012 Court of Chancery Hr'g Tr. (No. 6974-CS)) at 27 ("There is no irreparable injury in my view that's presented here. None.").

Both this Court and the Court of Chancery have already recognized that there is no "irreparable harm" to Huawei and ZTE by not going forward with their FRAND Counterclaims until after the ITC decides the patent issues before it. Huawei and ZTE have raised their FRAND defenses in the ITC, and the ITC will fully consider the merits of those defenses before issuing any exclusion order. If Huawei and ZTE prevail on their FRAND defenses in the ITC, then no exclusion order will be issued and they will not be harmed. If they lose on those defenses, then it will be after a competent tribunal, on a full and extensive record, has considered the defenses and found that InterDigital did not violate any FRAND commitments. Huawei and ZTE describe no cognizable "irreparable injury" that could justify expediting a case. *See* Crompton Decl., Ex. 2 at 27. This is simply an effort by Huawei and ZTE to seek an advisory opinion on their potential liability for "FRAND license" payments *before* the ITC and this court rule on the intertwined issues of patent infringement, validity and essentiality. This Court directly rejected this approach once and should, respectfully, do it again here. *See* Crompton Decl., Ex. 3 at 17-18, 100.

## V.    Expedition Is Not Warranted In Light of the Procedural Posture of These Actions and the Related Actions.

The Court previously denied Huawei's request to set a Rule 16 conference on an expedited basis, as the pleadings are not closed in the Huawei case or in the related cases. *See* January 31, 2013 Oral Order (unnumbered on docket). Nokia filed its Answer and Counterclaims earlier today, also raising FRAND based counterclaims. (D.I. #8). Defendant Samsung's Answer to the complaint is not even due until April 4, pursuant to an extension they requested and to which InterDigital assented. It thus remains to be seen whether Samsung will

14

assert FRAND counterclaims and, if so, what relief they will seek. In addition, the deadline for invoking the mandatory stay pursuant to 28 U.S.C. § 1659 will not occur until approximately March 6, 2013. Therefore, it also remains to be seen whether any of the defendants will invoke the mandatory stay. Because the related actions should be coordinated as far as possible, it would be imprudent to bifurcate, expedite, and prioritize counterclaims raised by some defendants without knowing how the other defendants will proceed. The Court should consider the scheduling of the four related cases together, after the pleadings are closed.

Aside from the complexities introduced by the pendency of the related cases, even within the context of a single case, it makes no sense to isolate the FRAND Counterclaims and to adjudicate them outside the context of the patent infringement issues with which they are intertwined. If the patents-in-suit are neither valid nor infringed, then Huawei and ZTE will presumably opt not to take a license to them. Determining a "FRAND rate" for a license would not streamline or obviate anything, because Huawei and ZTE would then proceed to challenge the validity and infringement of the patents-in-suit in order to avoid license payments. Moreover, because FRAND obligations are only applicable to essential patents (*i.e.*, patents *necessarily infringed* in practicing a standard), it will be necessary to establish essentiality (which is intertwined with infringement) in determining whether FRAND commitments even exist as to the patents in suit. Assuming the FRAND Counterclaims could survive a motion to dismiss, the only reasonable course of action would be to adjudicate the counterclaims concurrently with, or after, the issues of patent infringement and validity. For that reason as well, Huawei and ZTE's request to bifurcate and expedite their FRAND Counterclaims should be denied.

## CONCLUSION

For the foregoing reasons, InterDigital respectfully requests that the Court deny Huawei's and ZTE's application to bifurcate this case and expedite their FRAND Counterclaims. InterDigital respectfully requests that the Court allow the pleadings to be closed, determine whether Defendants will invoke the automatic stay, and then set a Rule 16 conference for these cases.

PROCTOR HEYMAN LLP

/s/ Neal C. Belgam
Neal C. Belgam (# 2721)
E-mail: nbelgam@proctorheyman.com
Melissa N. Donimirski (#4701)
E-mail: mdonimirski@proctorheyman.com
300 Delaware Avenue, Suite 200
Wilmington, DE  19801
(302) 472-7300

Counsel for Plaintiffs InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc.

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
Michael A. Ladra
E-mail: Mike.Ladra@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC  20004
(202) 637-2200

WILSON SONSINI GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

WILSON SONSINI
GOODRICH & ROSATI
Larry L. Shatzer
E-mail: lshatzer@wsgr.com
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
(202) 973-8800

Dated:  February 28, 2013