## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | |
| Plaintiffs | |
| v. | C.A. No. 1:13-00008-RGA |
| HUAWEI TECHNOLOGIES CO., LTD, a Chinese corporation, FUTUREWEI TECHNOLOGIES, INC. D/B/A HUAWEI TECHNOLOGIES (USA) a Texas Corporation, and HUAWEI DEVICE USA, INC., a Texas corporation, | |
| Defendants. | |
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | |
| Plaintiffs | |
| v. | C.A. No. 1:13-00009-RGA |
| ZTE CORPORATION, a Chinese corporation, and ZTE (USA) INC., a New Jersey corporation, | |
| Defendants. | |

## JOINT REPLY BRIEF IN SUPPORT OF
## MOTIONS TO EXPEDITE PROCEEDINGS FOR THE
## DECLARATION OF FRAND LICENSE TERMS

Of Counsel:

Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611
Telephone: (312) 321-4200


Dated: March 11, 2013

-Of Counsel-
Stanley Young
Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065
(650) 632-4700

David W. Haller
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018
(212) 841-1057

Winslow Taub
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111

DATED: March 11, 2013

RICHARDS, LAYTON & FINGER, P.A.
Kelly E. Farnan (#4395)
Farnan@rlf.com
Travis S. Hunter (#5350)
Hunter@rlf.com
One Rodney Square
920 N. King St.
Wilmington, DE 19801

*Attorneys for Defendant ZTE (USA) Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
apoff@ycst.com
msquire@ycst.com

*Attorneys for Huawei Technologies Co., Ltd.,
Futurewei Technologies, Inc., and Huawei
Device USA, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

   I. Expedited Treatment Would Serve Judicial Economy .......................................................3

      A. *Microsoft* Provides Precedent and Procedural Guidance for Expediting Declaration of FRAND Licensing Terms..............................................................6

         1. *Microsoft* Shows that Prioritization of FRAND Issues Is Efficient and Proper ...6

         2. *Microsoft* shows that Movants' Counterclaims Are Justiciable...........................7

      B. Movants Have Committed to Accept this Court's Judicially Determined FRAND Terms .............................................................................................8

   II. Expedited Treatment Would Avoid Irreparable Harm .....................................................10

CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
   869 F. Supp. 2d 901 (N.D. Ill. 2012) ................................................................. 12

*Apple, Inc. v. Motorola Mobility, Inc.*,
   No. 11-cv-178-bbc, 2011 WL 7324582 (W.D. Wis. June 7, 2011) ....................... 4

*Apple, Inc. v. Motorola Mobility, Inc.*,
   No. 11-cv-178-bbc, 2012 WL 5416931 (W.D. Wis. Nov. 2, 2012).......................... 9

*In The Matter of Certain Elec. Devices, Including Wireless Commc'n Devices, Portable Music
   and Data Processing Devices, and Tablet Computers*,
   Inv. No. 337-TA-794, 2012 WL 4752221 (Int'l Trade Comm'n Sept. 14, 2012)................... 11

*eBay Inc. v. MercExchange*,
   LLC, 547 U.S. 388 (2006) ..................................................................................... 12

*Ericsson Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 2:06-cv-63, 2007 WL 1202728 (E.D. Tex. April 20, 2007)............................. 7

*Microsoft Corp. v. Motorola, Inc.*,
   854 F. Supp. 2d 993 (W.D. Wash. 2012) .............................................................. 6

*Microsoft Corp. v. Motorola, Inc.*,
   871 F. Supp. 2d 1089 (W.D. Wash. 2012) ............................................................ 14

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10-1823JLR, 2012 WL 5993202 (W.D. Wash. Nov. 30, 2012) ................... 13

*Mulford v. Altria Group, Inc.*,
   506 F. Supp. 2d 733 (D.N.M. 2007)..................................................................... 13

*Nokia Corp. v. Qualcomm, Inc.*,
   No. 06-509-JJF, 2006 WL 2521328 (D. Del. Aug. 29, 2006)................................ 4

*Rembrandt Techs., L.P. v. Harris Corp.*,
   No. 07C-09-059-JRS, 2009 WL 1509103 (Del. Super. May 22, 2009)....................... 4, 9, 10

*Research in Motion Ltd. v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ................................................................. 13

*Spansion, Inc. v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010) ............................................................................ 12

ii

*Texas Instruments Inc. v. Tessera, Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000) ........................................................................ 14

*United States v. Lane Labs-USA, Inc.*,
    324 F. Supp. 2d 547 (D.N.J. 2004) ................................................................. 13

**Statutes**

19 U.S.C. §§ 1337(b)(1), (d)(1) ............................................................................ 12

## INTRODUCTION

Huawei and ZTE ("Movants") seek a quick, efficient resolution to their disputes with InterDigital. InterDigital is a licensing company and has declared certain of its U.S. patents to be essential to one or more telecommunications standards set by relevant Standards Setting Organizations ("SSOs"). InterDigital thereby undertook an obligation to license those declared standard essential patents ("SEPs") on fair, reasonable and non-discriminatory ("FRAND") terms. Movants are manufacturers of mobile phones and other devices who implement those standards and *want a license* to InterDigital's U.S. SEPs on FRAND terms. The relief Movants seek—the judicial determination of FRAND license terms—would be the final piece of the puzzle, mooting all pending litigation between InterDigital and Movants, including this action, the 654 action, and the two pending investigations at the International Trade Commission ("ITC"). Thus, for the sake of judicial efficiency and to preserve private resources, Movants seek an early adjudication of FRAND license terms.

In an attempt to set a roadblock to this Court's adjudication of FRAND terms, InterDigital argues that this Court must find the asserted patents in this lawsuit to be valid, infringed, and essential to the accused standards before determining the FRAND terms for InterDigital's U.S. portfolio. However, InterDigital cannot point to a single court that, when asked to determine FRAND terms for a patent portfolio, has refused to do so before assessing the essentiality of each individual patent in the portfolio at issue. To the contrary, other courts have prioritized claims for a declaration FRAND terms where a SEP holder has declared the asserted patents to be essential to industry standards and has initiated litigation based on the accused products' alleged compliance with those standards. Movants are entitled to a FRAND license that covers all of InterDigital's U.S. declared-essential patents, and Movants, this Court, and the

ITC would benefit from an early adjudication of those terms. Faced with analogous circumstances, this Court has permitted early resolution of license-based defenses in a patent infringement action. *See* Taub Decl., Ex. A, *Bayer Cropscience AG v. Dow Agrosciences LLC*, C.A. No. 12-256-RGA, D.I. 35, Tr. at, *e.g.,* 13:24-14:5 (D. Del. Jan. 7, 2013); *see also* Taub Decl., Ex. B, *E.I. Dupont De Nemours Co. v. Great Lakes Chemical Corp.*, C.A. No. 04-1452-JJF, D.I. 64 at 3-4 (D. Del. July 28, 2006).

Moreover, the urgency of judicially determined FRAND license terms here is acute. Movants' face the threat of injunctive relief in the form of an ITC exclusion order, which can only be halted by this Court. It is undisputed that the ITC will not set the FRAND terms. Just as the court found in *Microsoft Corp. v. Motorola, Inc.*, this Court should come to "the inescapable conclusion that a forum must exist to resolve honest disputes between patent holder and implementer as to what in fact constitutes a RAND license agreement," and that "the courthouse may be the only such forum." *Microsoft*, No. C10-1823JLR, 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012). The *Apple* and *Microsoft* decisions cited by Movants in their opening briefs and below, as well as the recent FTC Google consent order, all make clear that it is most efficient to adjudicate FRAND claims and set FRAND terms *before* an ITC investigation is allowed to proceed.

Movants face a very real risk of irreparable harm—potential exclusion orders in two separate pending ITC investigations. The target date for the Commission's opinion in the 800 Investigation is October 28, 2013; in the 868 Investigation, the target date is June 4, 2014. Thus, time is of the essence, and the Court should grant Movants' motions.[1]

---

[1] Importantly, Movants are entitled to a license regardless of whether defendants in co-pending cases filed by InterDigital, Nokia and Samsung, choose to seek the same relief. Movants request

## ARGUMENT

### I.     EXPEDITED TREATMENT WOULD SERVE JUDICIAL ECONOMY

Because Movants agree to be bound by the Court's finding regarding FRAND license

terms, that determination will necessarily end the dispute between the parties, mooting any need

for the Court to grapple with the issues of validity, infringement, enforceability, and Movant's

other defenses.[2]  Nor will the Court be required to assess whether each patent is essential to a

standard if it proceeds first to determine FRAND terms.  InterDigital suggests, repeatedly, that

Movants must concede essentiality and infringement, or have essentiality and infringement

adjudicated by this Court, before they can even *seek* a FRAND rate.  But InterDigital has

declared to SSOs that its patents are or may become essential to implement the relevant

standards.  InterDigital also has asserted in this and other litigation, as well as in negotiations

with prospective licensees such as Movants, that its patents *are* essential to the practice of

technological standards.  For the purposes of setting FRAND terms for InterDigital's U.S. SEPs,

InterDigital should be held to its prior representations about the essentiality of the patents at

issue and should not be allowed to avoid its FRAND commitments by suddenly questioning its

own prior statements about essentiality.

InterDigital's FRAND obligation exists notwithstanding the fact that essentiality and

infringement of the individual asserted patents is denied and has not been proven in this case.

---

that their plea for urgent relief be considered separately on the merits and not be "held hostage"
by action or inaction by these other companies.

[2] To the extent the Court may expect to hear evidence related to any of the patents (whether
concerning infringement, validity, or essentiality), all such evidence would be limited to an
assessment of the overall value of InterDigital's portfolio.  Movants expect this type of evidence
to be the subject of expert testimony from licensing professionals, who routinely do this type of
analysis.

*See Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2011 WL 7324582, at *6-11

(W.D. Wis. June 7, 2011) (involving the same ETSI policy as is at issue here).

> As the court found in *Apple*:

> The policies of the standards setting organizations become far less useful
> or effective if a company who has declared its patents as essential, thereby
> encouraging the organization to adopt the standard, can then refuse a fair,
> reasonable and non-discriminatory license until essentiality is proven,
> either through patent infringement litigation or otherwise.

*Id.* at *6. For adjudication of the FRAND obligation, it is not necessary "to determine whether

the patents at issue are in fact 'essential' because [Motorola] has already voluntarily declared

them essential." *Id.*, quoting *Nokia Corp. v. Qualcomm, Inc.*, No. 06-509-JJF, 2006 WL

2521328, *1-2 (D. Del. Aug. 29, 2006); *see also Rembrandt Techs., L.P. v. Harris Corp.*, No.

07C-09-059-JRS, 2009 WL 1509103 (Del. Super. May 22, 2009) ("*Rembrandt*") (denying

motion to compel defendant to either admit infringement or concede in the alternative that it was

not entitled to a license because the patent was not essential). The same standard applies to

InterDigital and its voluntary declarations of essentiality. The only question that remains is the

appropriate FRAND terms and the only forum for setting those terms is this Court. As such,

bifurcation, or at least prioritization of the FRAND claims, presents the most efficient way to

resolve the disputes between the parties despite InterDigital's protestations to the contrary.

To be clear, although Movants submit that it would be most efficient to completely

bifurcate the setting of FRAND terms from the remainder of the issues in this case, bifurcation is

not required and, indeed, was not requested by Movants. Rather, Movants requested that

adjudication of the FRAND issues be *prioritized* before the other issues in the case such as

infringement and invalidity. Such prioritization could be accomplished without bifurcating the

case. For example, the Court could set a standard schedule for discovery, dispositive motions,

and a full trial on patent infringement issues, while also setting an accelerated schedule, including a mini bench trial to set a FRAND royalty rate on an expedited basis.

Faced with analogous circumstances in *Bayer Cropscience AG v. Dow Agrosciences*, this Court found that early adjudication of a licensing defense would be the most efficient way to manage a patent infringement case. *See* Taub Decl., Ex. A, Tr. at 13:25-14:5. Notably, in that case, the plaintiff did not dispute that the license defense could be dispositive and an early resolution of that issue would be beneficial, but argued that the defendant should first be required to stipulate to infringement. *Id.* at 5:23-6:17. The Court declined to require a stipulation of infringement, prioritized the licensing issues over the patent infringement issues, and entered a scheduling order that allowed for early adjudication of the license defense. *Id.* at 12:19-22, 13:25-14:5; Taub Decl., Ex. C, *Bayer*, D.I. 39 at ¶ 11. Similarly, in *E.I. Dupont De Nemours v. Great Lakes Chemical Corporation*, C.A. No. 04 1452-JJF, the defendant argued that the Court could dispose of the patent infringement case on summary judgment because of a non-assert provision in a license agreement that purportedly prohibited the plaintiff from asserting any of its patents to prevent the defendant from manufacturing, using, or selling the accused product. The Court concluded that, because the license defense could be dispositive, bifurcation and a partial stay of the infringement aspects of the case were warranted and that "the benefit of potentially disposing of the case without addressing claim construction and other patent issues outweighs any burden caused by an overlap of discovery." Taub Decl., Ex. B at 3-4.

Indeed, contrary to InterDigital's assertion, there is precedent for just such a prioritization of FRAND issues over patent issues in another district court: *Microsoft Corp. v. Motorola, Inc.*, No. 10-cv-1083 (W.D. Wash.) ("*Microsoft*").

A.    *Microsoft* Provides Precedent and Procedural Guidance for
      Expediting Declaration of FRAND Licensing Terms

1.    *Microsoft* Shows that Prioritization of FRAND Issues Is
      Efficient and Proper

Movants submit that *Microsoft* provides guidance on how the Court could efficiently

proceed on FRAND issues before patent issues.[3]  After initially allowing discovery and

dispositive motion briefing to proceed for both FRAND issues and patent issues simultaneously,

the court indicated that it would set a mini trial for establishing FRAND license terms and

effectively stay the case regarding patent issues.  Taub Decl., Ex. D, *Microsoft*, D.I. 348, Tr. at

68:10-69:25.  The court then issued a formal stay of all of litigation on other issues in the case

except those relating to setting the FRAND rates.  Taub Decl., Ex. E, *id.* on p. 6, D.I. 360 (July

16, 2012); *see also Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1002-03 (W.D.

Wash. 2012) ("[T]o move the adjudication process forward with respect to the RAND-based

issues in this case, the court intends to schedule a mini-trial on any unresolved RAND-based

issues.").

The court subsequently adopted a two-part approach for proceeding to set the FRAND

rates and resolve the breach of contract issues.  The court first would determine a FRAND

royalty rate at a mini bench trial, leaving open the possibility thereafter to conduct a jury trial on

---

[3] Motorola sued Microsoft in several forums for patent infringement of declared essential patents related to wireless technology and video compression. *See Motorola. Inc. v. Microsoft Corp.*, Nos. 10-699, 10-700 (W.D. Wis.); *Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, Inv. No. 337-TA-752 (Int'l Trade Comm'n) (the "752 Action").  Microsoft in turn brought suit in the Western District of Washington for declaration of FRAND license terms on Motorola's declared-essential patents, including the patents asserted in that case, and for breach of contract related to Motorola's failure to live up to its FRAND commitments.  Taub Decl., Ex. F, *Microsoft*, Amended Compl., D.I. 53 (Feb. 23, 2011).  One of Motorola's Western District of Wisconsin cases was transferred and consolidated with *Microsoft* and, as a result, both the patent and FRAND issues were before the court.  Taub Decl., Ex. G, *id* on p.6 n.3, D.I. 66 at 12 (Jun. 1, 2011).

the breach of contract claim using the FRAND rate determination as guidance. *Microsoft*, 2012
WL 4827743, at *9. Importantly, the court held that adjudicating a FRAND rate first among the
issues in the case was the most efficient way to resolve the parties' dispute, stating:

> [R]egardless of whether Motorola has breached its contractual agreement to make
> good faith offers, Motorola is obligated to grant Microsoft a RAND license.
> Presumably, the parties are before the court because they currently cannot agree
> to RAND licensing terms. . . . The court finds that a return to the negotiation
> table, without any adjudication as to what in fact constitutes a RAND royalty rate,
> will accomplish nothing more than delay.

*Id.*; *see also Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:06-cv-63, 2007 WL 1202728, *3
(E.D. Tex. April 20, 2007) ("possibility that a resolution of the FRAND case might alleviate
many of the primary differences between these two parties" justifies bifurcation).

Thus, *Microsoft* provides a framework for how this case could proceed with priority to
the FRAND issues. Moreover, the court's reasoning in *Microsoft* undermines InterDigital's
argument that the FRAND issues will be adequately decided in the ITC. The ITC will not solve
the overarching dispute between the parties, *i.e.*, determination of the proper FRAND royalty
rate, and proceeding with the ITC investigation does not further the laudable goals of widespread
accessibility to essential patents set forth by the SSOs. Only this Court can resolve that issue,
and Movants submit that it makes abundant sense to do so ahead of addressing the patent validity
and infringement issues.

### 2.      *Microsoft* shows that Movants' Counterclaims Are Justiciable

InterDigital argues that Movants' counterclaims should not be expedited because they are
"legally unsound." Resp. at 12. InterDigital's argument is belied by *Microsoft*, in which that
court has separately moved forward on claims for a declaration of FRAND license terms and
breach of contract based on facts that in all pertinent respects are indistinguishable from those in
this case. In *Microsoft*, Motorola moved for summary judgment on Microsoft's claim for a

FRAND license, arguing *inter alia*, that it would be improper for the court to create a contract

for the parties. The court denied the motion, holding that Motorola's commitments to the

pertinent SSOs created a contract to which Microsoft was a third party beneficiary and which

required Motorola to grant a license to Microsoft on FRAND terms. The court held that it was

the proper (and only) forum to resolve the parties' dispute over the license terms. *Microsoft*,

2012 WL 4827743, at *6-7.

Like InterDigital, Motorola also argued that it believed the court would have to rule on

more terms than just a FRAND royalty rate, *see* Taub Decl., Ex. H, *id.*, D.I. 359, Tr. at 8:5-20

(July 16, 2012), but the court held that it would be able to determine a FRAND range and a

specific FRAND rate for a license between the parties at a mini trial, which would afford the

parties an opportunity to come to an individualized executable license agreement. *Microsoft*,

2012 WL 4827743, at *9, n.14.[4] Like Microsoft, Movants do not seek an advisory opinion or a

vague, unresolvable remedy. Movants are third party beneficiaries of InterDigital's contractual

commitment to the pertinent SSOs. Movants, like Microsoft, are entitled to a license on FRAND

terms and agree to be bound by this Court's determination on those terms. And as in *Microsoft*,

this Court can most efficiently solve the dispute between the parties by determining the proper

FRAND terms between the parties.

**B.     Movants Have Committed to Accept this Court's Judicially
        Determined FRAND Terms**

InterDigital also alleges that Movants are not sufficiently committed to enter a license at

FRAND license terms set by the Court as a basis for submitting that the Court should not

---

[4] The *Microsoft* court also left open the possibility of creating a whole license agreement for the parties "if appropriate, at a later stage of this litigation." Taub Decl., Ex. I, Amended Order, D.I. 469, at 3 (Oct. 11, 2012). In either case, resolution of the key financial terms will certainly facilitate the creation of a license and the resolution of the dispute.

advance the license aspects of the case.  InterDigital suggests that Movants or their counsel are

being dishonest in stating that they "really and truly" intend to pay the judicially determined

royalty rate.  Resp. at 10–11.  Even if that were a proper argument, the Court need not evaluate

the sincerity of defendants or their counsel in a vacuum.  When Movants were last before the

Court, the Court indicated that it might require sworn statements to that effect from authorized

corporate officials.  *See* Taub Decl., Ex. J, C.A. No. 11-654-RGA, D.I. 72, Tr. at 88:18-22 (Mar.

2, 2012).  Movants stand ready to provide such assurances should the Court require them.

 In this regard, Movant's request for relief differs fundamentally from the requests

considered in *Rembrandt* and *Apple v. Motorola*.  Unlike the standards implementers in those

cases, Movants have not made their request for a license contingent on factors that will entangle

the FRAND analysis with issues of validity and infringement of individual patents.  Nor have

Movants set pre-conditions for paying the judicially determined rate.  Contrary to InterDigital's

arguments, an adjudication of the FRAND counterclaims in this case *will* lead to a FRAND

license and termination of the ongoing litigation between the parties.

 The distinction between this case and *Apple v. Motorola* is straightforward:  defendants in

this case have committed to paying the judicially determined terms, while Apple did not.  Apple

also made acceptance of the judicially determined FRAND rate contingent upon the rate falling

below a specific value.  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL

5416931, at *1 (W.D. Wis. Nov. 2, 2012).  Apple's failure to commit was the sole basis for the

decision of the *Apple v. Motorola* court to refuse to declare a FRAND rate, but there is no such

failure here.  Movants have not made their request contingent.  In addition, the court in *Apple v.

Motorola* found a lack of irreparable harm because Apple had already succeeded in defending

against Motorola's attempts to seek injunctive relief.  *Id.* at *3.  Here, in contrast, Movants face

9

two separate ITC investigations, either of which may result in an order preventing importation and sale of defendants' products in the United States. It is for precisely that reason—the need to provide Movants a FRAND royalty rate before their U.S. businesses are irreparably harmed—that Movants seek expedited adjudication of their FRAND counterclaims.[5]

As for *Rembrandt*, Movants face a very different situation here. The accused infringer in *Rembrandt* sought a license to *a single patent*—the same patent that was the subject of parallel infringement litigation in federal court. *Rembrandt*, 2009 WL 1509103, at *1. Here, Movants seek a FRAND license as to InterDigital's entire U.S. declared-essential portfolio, including patents not asserted by InterDigital here. This distinction is critical; unlike in *Rembrandt*, Movants' need for a FRAND license will survive the resolution of the liability issues for the particular patents asserted in this case and before the ITC. Thus, unlike in *Rembrandt*, litigating patent infringement and validity first in this case will not moot Movants' need for a license on FRAND terms.[6]

## II.    EXPEDITED TREATMENT WOULD AVOID IRREPARABLE HARM

InterDigital argues that there will be no irreparable harm because no exclusion order will issue if Movants prevail on their FRAND defenses at the ITC. However, there is no such guarantee. The ITC Office of Unfair Import Investigations Staff has taken the position that

---

[5] InterDigital cites the irrelevant fact that Apple in the Wisconsin case was represented by the same law firm that represents Huawei in this case. What is relevant to the issues here is the commitment Movants have made to this Court; they have committed to take a license on FRAND terms set by this Court, without equivocation. What a different party decided to do in a different case should have no effect on what happens in this case, regardless of which law firms were involved.

[6] The *Rembrandt* court also stayed the litigation in part because the defendant reserved the right to argue that "no payments are due under the license," if the asserted patent were found not infringed or invalid. *Id.* at *3. Here, in contrast, defendants have committed to pay the court-determined FRAND terms for InterDigital's U.S. portfolio of declared-essential patents *regardless of whether any particular patent is infringed or valid.*

Movants' FRAND-based affirmative defenses in the most recently filed investigation are "not a basis for terminating or delaying a Commission investigation." Taub Decl., Ex. K, Staff Resp. to Mot. for Stay at 6, Inv. No. 337-TA-868 (Mar. 7, 2013). In particular, the Staff has argued that, even if Movants were to show that they are entitled to and willing to pay for a FRAND license, the ITC should still order exclusion of Movants' products from the United States if they are found to infringe the asserted patents. *Id.*[7] Under the theory advocated by the ITC Staff, Movants could only avoid the threat of an injunction through a prompt adjudication of a FRAND terms by this Court and declaration of a license.[8]

Indeed, InterDigital's second ITC Complaint directed at Movants in the 868 Investigation—filed just weeks before the evidentiary hearing in the 800 Investigation and covering some of the very same products—is the best evidence of why Movants seek the relief of a judicially determined license on FRAND terms. By its actions, InterDigital has made perfectly clear that it intends to perpetuate an endless cycle of ITC litigation against Huawei and ZTE.

Why does InterDigital want to be at ITC rather than in this Court? First, the sole remedy available at the ITC is injunctive, including a nationwide ban on imports in the form of an

---

[7] Moreover, as discussed in Movants' opening brief, an ITC Administrative Law Judge recently held that the ITC *can* issue exclusion orders even for FRAND-commitment encumbered patents. Initial Determination, *In The Matter of Certain Elec. Devices, Including Wireless Commc'n Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, 2012 WL 4752221, at *248 (Int'l Trade Comm'n Sept. 14, 2012) ("The Administrative Law Judge concludes that ETSI and its FRAND provisions do not preclude the imposition of Section 337 remedies in investigations in which the Commission determines that the authorizing statute is violated by reason of the importation into the United States of articles that infringe a valid and enforceable United States patent.").

[8] Absent the expedition that Movants seek, and in view of the Staff's position, it may be necessary for Movants to seek an injunction staying the investigations while this Court's FRAND determination takes place. Movants hope that this Court's expeditious declaration of FRAND terms will make such an injunction motion unnecessary.

exclusion order enforced by the U.S. Customs and Border Patrol. The ITC has no ability to order

damages in lieu of exclusion from the U.S. market or to set a reasonable royalty rate. Second,

the ITC does not apply the *eBay* factors in determining whether an exclusion order issues. *eBay*

*Inc. v. MercExchange*, LLC, 547 U.S. 388 (2006); *See* 19 U.S.C. §§ 1337(b)(1), (d)(1); *see also*

*Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1358 (Fed. Cir. 2010). Under *eBay*, a non-

practicing entity such as InterDigital would be hard-pressed to secure an injunction against large

mobile phone manufacturers such as Movants—particularly in the context of SEPs. *See eBay* at

396-97 (J. Kennedy concurring). Third, like Google/Motorola before it, InterDigital uses

"threats of exclusion orders and injunctions to enhance its bargaining leverage against willing

licensees and demand licensing terms that tend[] to exceed the FRAND range." *See* Taub Decl.,

Ex. L, *In the Matter of Motorola Mobility LLC & Google Inc.*, FTC File No. 121-0120,

Complaint at ¶¶ 25-27 (Jan. 3, 2013) (finding Google's breach of SSO declarations to constitute

unfair competition). Thus, even if Movants are successful in defending the first ITC action, they

still will require the relief requested here.

Indeed, since this issue was before this Court last year, the type of bargaining leverage

that InterDigital seeks at the ITC has repeatedly been found to inflict irreparable harm and to be

the basis for courts to preclude injunctive relief for SEPs. In addition to Judge Robart in

*Microsoft*, Judge Posner has found:

> I don't see how, given FRAND, I would be justified in enjoining Apple from
> infringing the 898 unless Apple refuses to pay a royalty that meets the FRAND
> requirement. By committing to license its patents on FRAND terms, Motorola
> committed to license the 898 to anyone willing to pay a FRAND royalty and thus
> implicitly acknowledged that a royalty is adequate compensation for a license to
> use that patent. How could it do otherwise? How could it be permitted to enjoin
> Apple from using an invention that it contends Apple *must* use if it wants to make
> a cell phone with UMTS telecommunications capability—without which it would
> not be a cell *phone*.

*Apple Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913-14 (N.D. Ill. 2012); *see also Microsoft*

*Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 5993202, at *7-8 (W.D. Wash. Nov. 30, 2012) (enjoining Motorola from seeking injunctive relief against Microsoft with respect to SEPs). In addition, every federal agency that has pronounced on the subject has now gone on record stating that injunctive relief for SEPs cannot be justified against willing licensees like the Movants here. *See* Opening Br. at 10-15 (citing FTC, DOJ, and USPTO); *see also Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 796 (N.D. Tex. 2008) (allegations of refusal to license essential patents on FRAND terms properly pled anticompetitive conduct causing harm to plaintiff and to competition generally).[9]

The only way to avoid the irreparable harm of losing their U.S. business as a result of an exclusion order would be for Movants to accept a license to InterDigital's SEPs at whatever royalty rates InterDigital can command with an impending injunction looming over the Movants' heads.[10] InterDigital's strategy of forcing Movants to choose between agreeing to unfair terms or ceasing sales in the United States is fundamentally inconsistent with the obligation InterDigital undertook to license its U.S. declared essential patents on FRAND terms. *Microsoft*

---

[9] InterDigital claims that Movants "rely primarily on a proposed settlement agreement between Google/Motorola and the Federal Trade Commission as authority for the proposition that a patent holder may only seek injunctive relief after litigation to set a FRAND rate is complete." Resp. at 7. Movants do not contend that the FTC Google Consent Order is binding precedent. Rather, Movants cited the Consent Order because it reflects the FTC's view of the limitations on the availability of injunctive relief for SEPs against willing licensees. The Consent Order also reflects a broad consensus among policy makers on the basic premise that injunctive relief should not be available for SEPs where, as here, the licensees are willing to pay FRAND royalty rates. *See Mulford v. Altria Group, Inc.*, 506 F. Supp. 2d 733, 763 n.7 (D.N.M. 2007) ("Although a[n FTC] consent order is directed to the parties to the order, clear rules can be announced in consent orders that have general application to the industry."). Furthermore, the *Lane Labs* case cited by InterDigital states within the same footnote cited that consent decrees are "instructive to this Court's determination." *United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 547, 578 n.17 (D.N.J. 2004).

[10] InterDigital could obviate the need for the requested relief by agreeing to stay the ITC cases pending this Court's determination of FRAND terms. However, consistent with InterDigital's strategy of litigating its patent disputes before the ITC, it has refused to agree to such a stay.

*Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1103 (W.D. Wash. 2012) (discussing effect of injunction in Germany on Microsoft's bargaining power). Movants hope that expeditious action by the Court to set FRAND terms will result in licenses that would avoid the need for any request for an injunction to prevent the irreparable harm that InterDigital's requested exclusion orders would wreak.

But, in light of the fact that the irreparable harm to Movants stems from the threat of exclusion by the ITC, Movants believe that, in the absence of an expedited setting of a FRAND rate by the Court, the Court would be justified in enjoining InterDigital from obtaining an exclusion order at the ITC until the FRAND proceedings in this Court are complete. *See Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000) (holding that district courts have power to enjoin parties from participating in ITC investigations). Such an injunction would remove the potential harm to Movants and yet allow the Court whatever time it believes would be necessary to set a FRAND rate and dispose of the case (while also mooting the ITC proceedings).

## CONCLUSION

For the foregoing reasons, Movants' Counterclaims for declarations of FRAND license terms warrant expedited treatment and prioritization ahead of the parties' other liability claims and defenses. As such, Movants move this Court for an Order setting a trial for the declaration of FRAND license terms no later than November 2013 and an Order requiring the parties to jointly submit an interim schedule.

Of Counsel:

Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL  60611
Telephone: (312) 321-4200


Dated:  March 11, 2013



-Of Counsel-
Stanley Young
Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065
(650) 632-4700

David W. Haller
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018
(212) 841-1057

Winslow Taub
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111

DATED: March 11, 2013

 /s/  Kelly E. Farnan
RICHARDS, LAYTON & FINGER, P.A.
Kelly E. Farnan (#4395)
Farnan@rlf.com
Travis S. Hunter (#5350)
Hunter@rlf.com
One Rodney Square
920 N. King St.
Wilmington, DE 19801


*Attorneys for Defendant ZTE (USA) Inc.*


 /s/  Martin S. Lessner
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
mlessner@ycst.com
apoff@ycst.com
msquire@ycst.com


*Attorneys for Huawei Technologies Co., Ltd.,*
*Futurewei Technologies, Inc., and Huawei*
*Device USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2013, I caused to be served copies of the foregoing document in the manner indicated below and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following counsel of record:

**VIA EMAIL**
Neal C. Belgam
Melissa N. Brochwicz Donimirski
Proctor Heyman LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472- 7300
nbelgam@proctorheyman.com
mdonimirski@proctorheyman.com

*Attorneys for Plaintiff*
*Interdigital Communications LLC*
*Interdigital Technology Corporation*
*IPR Licensing Inc.*

**VIA EMAIL**
Michael B. Levin
Maura L. Rees
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050
mlevin@wsgr.com
mrees@wsgr.com

*Attorneys for Plaintiff*
*Interdigital Communications LLC*
*Interdigital Technology Corporation*
*IPR Licensing Inc.*

/s/ Travis S. Hunter
Travis S. Hunter (#5350)
hunter@rlf.com