IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 1:13-cv-00008-RGA |
| Huawei Technologies Co., Ltd., a Chinese corporation, FutureWei Technologies, Inc. d/b/a Huawei Technologies (USA), a Texas corporation, and HUAWEI DEVICE USA, INC., a Texas corporation, | : : : : : : | **REDACTED PUBLIC VERSION** **JURY TRIAL DEMANDED** |
| Defendants. | : : : | |
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation, | : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 13-cv-00009-RGA |
| ZTE CORPORATION, a Chinese corporation, and ZTE (USA) INC., a New Jersey corporation, | : : : : | **REDACTED PUBLIC VERSION** |
| Defendants. | : : : | **JURY TRIAL DEMANDED** |

INTERDIGITAL COMMUNICATIONS, INC., a
Delaware corporation, INTERDIGITAL
TECHNOLOGY CORPORATION, a Delaware
corporation, IPR LICENSING, INC., a Delaware
corporation, and INTERDIGITAL HOLDINGS,
INC., a Delaware corporation,

        Plaintiffs,

        v.

NOKIA CORPORATION, a Finnish corporation,
and NOKIA INC., a Delaware corporation,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:    C.A. No. 1:13-cv-00010-RGA
:
:
:    **REDACTED PUBLIC VERSION**
:
:
:    **JURY TRIAL DEMANDED**
:
:

# PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AMENDED FRAND COUNTERCLAIMS OF NOKIA, HUAWEI, AND ZTE

PROCTOR HEYMAN LLP
Neal C. Belgam (# 2721)
E-mail: nbelgam@proctorheyman.com
Melissa N. Donimirski (#4701)
E-mail: mdonimirski@proctorheyman.com
300 Delaware Avenue, Suite 200
Wilmington, Delaware  19801
(302) 472-7300

Counsel for Plaintiffs InterDigital Communications,
Inc., InterDigital Technology Corporation, IPR
Licensing, Inc., and InterDigital Holdings, Inc.

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC  20004
(202) 637-2200

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

WILSON SONSINI
GOODRICH & ROSATI
Larry L. Shatzer
E-mail: lshatzer@wsgr.com
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
(202) 973-8800

Original Filing Date: August 30, 2013
Redacted Filing Date:  September 6, 2013

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS AND FACTUAL BACKGROUND ........... 1

I.  THE CURRENT DELAWARE COURT ACTIONS AND ITC
    INVESTIGATION ......................................................................................... 1

II. THE PRIOR, RELATED ITC, DISTRICT OF DELAWARE, AND DELAWARE
    COURT OF CHANCERY ACTIONS .................................................................. 2

III. THE OUTCOME OF THE 800 INVESTIGATION ......................................... 3

    A.  Findings Regarding the Meaning of FRAND Licensing Commitments ............... 4

    B.  Findings Regarding Negotiations with Huawei ...................................... 5

    C.  Findings Regarding Negotiations with ZTE .......................................... 6

    D.  Findings Regarding Negotiations with Nokia ........................................ 7

    E.  Finding of No Discrimination by InterDigital ....................................... 8

    F.  ███████████████████████ ........................................................ 9

IV. THE AMENDED COUNTERCLAIMS IN THIS ACTION ............................ 9

ARGUMENT ....................................................................................................... 11

I.  THE DJ COUNTERCLAIMS ARE NOT RIPE AND SHOULD BE DISMISSED
    FOR LACK OF JURISDICTION ..................................................................... 11

    A.  The Counterclaims Do Not Satisfy the First Prong .............................. 12

    B.  The Counterclaims Do Not Satisfy the Second Prong .......................... 14

    C.  The Counterclaims Do Not Satisfy the Third Prong ............................. 17

II. EVEN IF ARTICLE III JURISDICTION EXISTS, THE COURT SHOULD
    DECLINE TO EXERCISE JURISDICTION AS A DISCRETIONARY
    MATTER .................................................................................................... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603 (D. Del. 1987)........................19

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416931
    (W.D. Wis. Nov. 2, 2012)............................................................................15, 16, 18, 19

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-178-bcc, 2012 WL 7989412 (W. D.
    Wis. Nov. 8, 2012)................................................................................................16

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-178-bcc, 2012 WL 5943791 (W.D.
    Wis. Nov. 28, 2012) ............................................................................................19

*Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405 (3d Cir. 1992)..........................12

*Ashcroft v. Mattis*, 431 U.S. 171 (1977) .......................................................................12

*Astrazeneca Pharm. LP v. Apotex Corp.*, CIV 10-338 RBK/KW, 2010 WL
    5376310 (D. Del. Dec. 22, 2010) *aff'd,* 669 F.3d 1370 (Fed. Cir. 2012) ..........11

*Ericsson, Inc. v. D-Link Sys., Inc.*, No. 10-CV-0473, 2013 U.S. Dist. LEXIS
    110585 (E.D. Tex. Aug. 6, 2013) ......................................................................16

*Gould Elecs. Inc. v. U.S.*, 220 F.3d 169 (3d Cir. 2000) ................................................11

*In re Innovatio IP Ventures LLC Patent Litig.*, No. 11-C-9308, 2013 U.S. Dist.
    LEXIS 105554 (N.D. Ill. Jul. 26, 2013)..............................................................14

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823-JLR, 2013 WL 2111217 (W.D.
    Wash. Apr. 25, 2013)......................................................................................19, 20

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977)....................11

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ................................................11

*Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998) ..................................11

*Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294 (3d Cir. 1996)..........................................11

*Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2009 WL 1509103
    (Del. Super. Ct. May 22, 2009)..........................................................................15

*Step-Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643 (3d Cir. 1990).............12, 14, 17, 19

## Statutes

28 U.S.C. §1659 ............................................................................................................2, 3

28 U.S.C. § 2201(a) ...........................................................................................................19

## Rules

Fed. R. Civ. P. 8(a)(2) .........................................................................................................9

Fed. R. Civ. P. 12(b)(1) ......................................................................................................11

## Miscellaneous

6A J. Moore, Federal Practice, ¶ 57.20 (2d ed. 1979) ................................................19

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| 654 Action | *InterDigital Communications, LLC v. Huawei Tech. Co., Ltd., et al.*, Case No. 11-654-RGA (D. Del.) |
| 800 Investigation | *Certain Wireless Devices with 3G Capabilities and Components Thereof*, Investigation No. 337-TA-800 |
| 868 Investigation | *Certain Wireless Devices with 3G and/or 4G Capabilities and Components Thereof*, Investigation No. 337-TA-868 |
| InterDigital | Collectively, InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. |
| ZTE USA | ZTE (USA) Inc. |
| ZTE | Collectively, ZTE Corporation and ZTE (USA) Inc. |
| Huawei | Collectively, Huawei Technologies Co. Ltd., Futurewei Technologies, Inc. d/b/a Huawei Technologies (USA), and Huawei Device USA, Inc. |
| Nokia | Collectively, Nokia Corporation and Nokia Inc. |
| Samsung | Collectively, Samsung Electronics Corp., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC |
| Rees Decl. Ex. __ | Declaration of Maura L. Rees filed in support of this motion and Exhibits thereto |
| Defendants | Nokia, Huawei, and ZTE |
| 654 Action D.I. #__ | Docket entries in the 654 Action |
| D.I. (13-00008) #__ | Docket entries in Case No. 1:13-cv-00008-RGA (D. Del.) |
| D.I. (13-00009) #__ | Docket entries in Case No. 1:13-cv-00009-RGA (D. Del.) |
| D.I. (13-00010) # __ | Docket entries in Case No. 1:13-cv-00010-RGA (D. Del.) |
| ALJ | Administrative Law Judge |
| ZTE Countercl. | D.I. (13-00009) #58 and #68 |

| Abbreviation | Full Name |
|---|---|
| Huawei Countercl. | D.I. (13-00008) #67 |
| Nokia Countercl. | D.I. (13-00010) #49 |

**Note: All emphasis in quotations is added unless otherwise stated.**

## INTRODUCTION

The Court dismissed the FRAND counterclaims previously asserted by ZTE USA, Huawei, and Nokia, some with leave to amend and some with prejudice. Since that time, new events have transpired, providing additional facts and guidance that make it even more clear that there is no jurisdictional basis for the Court to entertain the Defendants' requests for declaratory judgments. First, the ALJ's Final Initial Determination in the 800 Investigation is now available, which includes full details of the parties' negotiation histories and the ALJ's conclusions that InterDigital did ***not*** breach any FRAND obligations. Second, Defendants have filed amended counterclaims with allegations about the efforts InterDigital has made to negotiate with them, confirming that Defendants have not been refused licenses. As set forth below, the declaratory judgment counterclaims do not meet the test for ripeness, and therefore should be dismissed.

### NATURE AND STAGE OF THE PROCEEDINGS AND FACTUAL BACKGROUND

### I.   THE CURRENT DELAWARE COURT ACTIONS AND ITC INVESTIGATION

On January 2, 2013, InterDigital filed four related actions for patent infringement in this Court against Huawei (C.A. No. 13-00008-RGA), ZTE (C.A. No. 13-00009-RGA), Nokia (C.A. No. 13-00010-RGA), and Samsung (C.A. No. 13-00011-RGA). The cases against Huawei and ZTE assert infringement of four patents related to 3G and 4G wireless communication technology. The case against Nokia asserts infringement of two patents related to 3G and 4G technology. On the same day, InterDigital also filed a complaint with the ITC against these defendants. D.I. (13-00008) #38-1. The ITC instituted the 868 Investigation on January 31, 2013. Fact discovery in the 868 Investigation is now closed, and trial is set for December 2013. The ALJ is scheduled to issue the Initial Determination by February 4, 2014, and the target date for completion, including Commission review, is June 4, 2014.

In this action, on July 12, 2013, the Court held a hearing on InterDigital's motion to dismiss the FRAND counterclaims asserted by Huawei, ZTE USA, and Nokia. The Court dismissed the counterclaims, granting leave to amend certain of them. D.I. (13-00008) #60. On August 6, 2013, these defendants filed their amended Answers and Counterclaims.[1] D.I. (13-00008) #67; D.I. (13-00009) #58; D.I. (13-00010) #49. Although InterDigital asserted only four patents in this action against Huawei and ZTE, and only two patents against Nokia, the counterclaims purport to cover all allegedly "essential" InterDigital U.S. patents including the patents asserted in this case, the patents asserted in the stayed 654 Action, and hundreds of other U.S. patents that Defendants characterize as "essential."

## II.   THE PRIOR, RELATED ITC, DISTRICT OF DELAWARE, AND DELAWARE COURT OF CHANCERY ACTIONS

On July 26, 2011, InterDigital filed two patent infringement actions against ZTE, Huawei, and Nokia: a complaint in the ITC (the 800 Investigation) and the 654 Action in this Court. 654 Action D.I. #1. InterDigital alleged infringement of eight InterDigital patents by products with 3G wireless capabilities.[2] The defendants requested, and this Court granted, a stay of the 654 Action under 28 U.S.C. § 1659 pending resolution of the 800 Investigation. *Id.* #19, 26. In the 800 Investigation, Defendants asserted the same FRAND-based defenses they now assert in the 868 Investigation.

In October 2011, Huawei filed a separate action in Delaware Court of Chancery where Huawei asserted the same FRAND allegations it asserted as affirmative defenses in the ITC. D.I.

---

[1] ZTE Corporation, the Chinese parent company of ZTE USA, filed its initial answer and counterclaims on August 27, 2013. D.I. (13-00009) #68. This motion is also directed to ZTE Corporation's counterclaims.

[2] The complaints in the 654 Action and the 800 Investigation originally asserted eight patents, but InterDigital later moved to terminate the Investigation as to one of the eight patents to streamline the issues, leaving seven remaining asserted patents.

(13-00008) #38-6.  Huawei also filed a motion to have these claims heard on an expedited basis.

Chancellor Strine denied Huawei's motion because, *inter alia*, "it makes absolutely no apparent

sense to me for this Court to do a piece of a larger dispute" and found no irreparable injury.  D.I.

(13-00008) #38-7 at 24:1-3, 26:2-19.  After losing its motion in the Court of Chancery, Huawei

then moved this Court to lift the stay it had requested under 28 U.S.C. § 1659 only as to certain

FRAND-related counterclaims.  654 Action D.I. #26.  ZTE joined in that motion and requested

expedition of the FRAND counterclaims.  *Id*. #35.  This Court denied Huawei's and ZTE's

motions to lift the stay and proceed only on the FRAND counterclaims.  *Id*. #71 & #72 at 98:6-

100:19.  The 654 Action has remained stayed in its entirety.

## III.    THE OUTCOME OF THE 800 INVESTIGATION

The 800 Investigation against ZTE, Huawei, and Nokia went to trial in February 2013.

On June 28, 2013, the ALJ issued the Final Initial Determination following trial, which

comprehensively and thoroughly addressed the claims and defenses.  Rees Decl., Ex. 1 ("800

ID"). The ALJ did not find any of the asserted claims of the patents-in-suit to be both valid and

infringed, and therefore no violation was found.  However, the ALJ also ruled on the FRAND

defenses asserted by ZTE, Huawei, and Nokia and rejected all of them. ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████ the ALJ found that *InterDigital did not violate any FRAND obligations*.  Any

review by the Commission of the decision is scheduled to be completed by October 28, 2013,

after which there may be collateral estoppel effect as to the FRAND findings if the ALJ's

decision remains unaltered in relevant respects.

A.      **Findings Regarding the Meaning of FRAND Licensing Commitments**

The ALJ first addressed the ETSI IPR Policy that is applicable to the UMTS/WCDMA and LTE standards.  The ALJ found that there is a difference in scope between IPRs that are to be disclosed under the ETSI IPR Policy and the IPRs that are eligible to be licensed on FRAND terms and conditions.  Patent holders are to disclose any patents that "might be" Essential.  *Id*. at 420, citing ETSI IPR Policy § 4.1.  The patent disclosure forms provided by IPR owners to ETSI list patents that "**may be or may become** ESSENTIAL."  *Id*.  A separate licensing undertaking (which is the source of the alleged contractual obligations) states that the IPR holder is "prepared to grant" licenses "**to the extent** that the IPRs disclosed . . . **are or become, and remain** ESSENTIAL."  *Id*.  Consequently, the ALJ recognized the FRAND commitment is expressly applicable only to patents that actually are Essential – not all patents that are disclosed as potentially Essential.  *Id*.  Regarding the CDMA2000 standard, the ALJ found that the ITU policy's licensing declaration states that for patents "the use of which would be required to implement" the standard, the patent holder "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions."  *Id*. at 421.  The ITU patent policy describes the nature of the licensing undertaking as follows: "the patent holder is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions."  *Id*.

Based on the actual language of the IPR policies, and the testimony of the parties' French law experts regarding the proper interpretation of the ETSI IPR policy, the ALJ found that "[t]his commitment means that the IPR owner must negotiate towards licenses on FRAND terms, making genuine and good faith efforts to reach agreement.  By so doing, the IPR owner fulfills its FRAND obligation."  *Id*.  In particular, "[u]nder French law, the type of obligation set forth in

the ETSI undertaking is best described as *un accord de principe* (agreement in principle)."  *Id.* at 422.  Consequently, "[t]his imposes on both negotiating parties a duty to negotiate in good faith. It does not, however, impose an obligation actually to conclude a contract."  *Id.* (citations omitted).   The ALJ also found that available remedies under French law "consist only of damages; there is no specific performance available, and there is no remedy consisting of 'the forced conclusion of a contract.'"  *Id.*

**B.**     **Findings Regarding Negotiations with Huawei**

**C.**     **Findings Regarding Negotiations with ZTE**

**D.     Findings Regarding Negotiations with Nokia**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

### E.     Finding of No Discrimination by InterDigital

The ALJ found that the FRAND nondiscrimination requirement prohibits "unfair discrimination," but it does not require uniform treatment across licensees, nor does it require the same terms for every manufacturer or competitor.  *Id.* at 432.  Nokia, Huawei, and ZTE based their arguments on their calculations of "effective royalty rates" of offers.  *Id.* However, a nondiscrimination analysis requires an examination of the whole of each license agreement, and not just an alleged effective royalty rate.  *Id.* ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████   Further, the ALJ specifically found that "offering a single worldwide rate is not discriminatory." *Id*. at 434.

### F.     Rejection of Specific Affirmative Defenses

The ALJ rejected each of respondents' affirmative defenses.  With respect to equitable estoppel and promissory estoppel, the evidence failed to show either that any statements by InterDigital were misleading, or that respondents relied on such statements.  *Id*. at 437.  The ALJ also found that the respondents failed to show that InterDigital waived its right to assert its patents by making disclosures to standard-setting organizations.  *Id.* at 438.  Further, the ALJ found that the ETSI declaration stating that InterDigital was "prepared to grant" licenses did not create either an implied or express license.  *Id*. at 439.  Finally, the ALJ found that respondents had failed to show any patent misuse.  *Id*. at 439-40.  While respondents had argued that InterDigital's proposals for a worldwide license served to "impermissibly expand[]" the scope of InterDigital's U.S. patents, the ALJ rejected this claim, as InterDigital's practice of licensing on a worldwide basis is common industry practice and does not demonstrate bad faith.  *Id*.

## IV.     THE AMENDED COUNTERCLAIMS IN THIS ACTION

Defendants' amended counterclaims include further detail about the parties' licensing negotiations, as well as various other allegations.  The counterclaims present a one-sided selection of alleged "facts," and omit a multitude of other countervailing facts that demonstrate the incorrectness of Defendants' characterizations.[3]  Indeed, the allegations are in large part simply restatements of Defendants' post-hearing briefs filed in the ITC in the 800 Investigation,

---

[3] Defendants' excessively lengthy counterclaims, including citation of cases and other purported authority, violate Rule 8's requirement of a "short and plain statement" of the claim and appear to be an effort to submit additional legal argument that is not otherwise authorized by the Court's rules. Fed. R. Civ. P. 8(a)(2).  The Court should disregard this improper additional material.

and in many instances have no apparent relevance to the actual counterclaims asserted. Nevertheless, having reviewed these same factual allegations and arguments in the context of the full evidentiary record, the ALJ rejected Defendants' positions and found no violations of FRAND commitments by InterDigital.

In Counts III and IV, ZTE and Huawei assert claims for declaratory judgments that InterDigital did not provide FRAND offers, and request that the Court determine an "appropriate FRAND royalty" for any "United States patents that have been declared essential to a standard used by any of the products accused in the earlier filed cases or this action" (without defining what those standards might be). ZTE Countercl., ¶ 97; Huawei Countercl., ¶ 144. Nokia's Count III and Count VIII likewise seek declaratory judgments that InterDigital has not offered FRAND terms, and requesting that the Court determine the "proper FRAND license terms" for the asserted patents, or alternatively, for "InterDigital's portfolio of United States patents that InterDigital has declared to ETSI and/or ITU as essential to third generation and/or fourth generation standards." Nokia Countercl., ¶ 94. Accordingly, Defendants are asking the Court to create a full license agreement, including all "FRAND license terms," for a subset of InterDigital's patent portfolio, although Defendants have not identified which specific patents are subject to the license they request. InterDigital estimates it has disclosed **close to 500 U.S. patents** in ETSI disclosures as potentially Essential to UMTS and/or LTE (*see, e.g.,* ZTE Countercl., Exs. 43-44). InterDigital has disclosed no patents to ITU as potentially essential to CDMA2000, as the ITU does not require disclosures of specific patents. Thus, it is not discernible from the counterclaims how many **additional hundreds of patents** Defendants seek to include in the license for CDMA2000 and any other standards they may seek to assert.

**ARGUMENT**

The FRAND declaratory judgment ("DJ") counterclaims (Huawei/ZTE Counts III and IV, and Nokia Counts III and VIII) should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. In deciding a Rule 12(b)(1) motion attacking the factual allegations of the asserted claim, no presumptive truthfulness attaches to the allegations. *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The party bringing the claim has the burden of proving that jurisdiction exists. *Id.* In addition, the court may consider evidence outside the pleadings and has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Astrazeneca Pharm. LP v. Apotex Corp.*, CIV 10-338 RBK/KW, 2010 WL 5376310, at *8 (D. Del. Dec. 22, 2010), *aff'd*, 669 F.3d 1370 (Fed. Cir. 2012) (citing *Mortensen*, 549 F.2d at 891).

**I. THE DJ COUNTERCLAIMS ARE NOT RIPE AND SHOULD BE DISMISSED FOR LACK OF JURISDICTION**

A claim should be dismissed for lack of jurisdiction on ripeness grounds where it pleads facts that have not yet matured to a point where judicial action is appropriate. *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (the "function of the ripeness doctrine is to prevent federal courts, 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' . . . '[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record.'") (internal citations omitted); *see also Peachlum v. City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003) ("the ripeness doctrine . . . counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.") (citations omitted). DJ claims in particular must be scrutinized for ripeness. *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3d

Cir. 1996).  The Third Circuit has developed a three-part test for determining the ripeness of DJ claims.  *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992).  The court must examine the '"adversity of interest' between the parties, the 'conclusivity' that a declaratory judgment would have on the legal relationship between the parties, and the 'practical help, or utility,' of a declaratory judgment."  *Id*.  Declaratory judgments may not be used to elicit advisory opinions.  *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (citations omitted).

### A.      The Counterclaims Do Not Satisfy the First Prong

Under the first prong of the test, the party asserting the claim must "demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Armstrong*, 961 F.2d at 411-12 (citations omitted);  "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy."  *Id*.; *see also Step-Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 648 (3d Cir. 1990).

Nokia and ZTE have averred in their counterclaims that their willingness to pay under a license is contingent on findings of validity, essentiality, and infringement of InterDigital's patents.  ZTE states that it is "willing to take a license for any of InterDigital's patents **that are valid, essential, and actually used by ZTE**." ZTE Countercl., ¶ 61.  Nokia likewise admits that it is only "willing to take a license for any of InterDigital's patents **that are valid, essential, and actually used by Nokia**."  Nokia Countercl.,  ¶ 43. Consequently, ZTE's and Nokia's counterclaims are expressly conditioned on findings of validity, infringement, and essentiality; they each reserve the right to reject payment of determined FRAND rates for patents that ZTE and Nokia consider to be invalid, not infringed, or not essential.  Nokia and ZTE confirmed this at the July 12, 2013 hearing, when Nokia's counsel's stated, and ZTE's counsel concurred, that "Whether they are valid or essential, that's the rate.  And **if** we want to license those patents,

that's the rate we have to pay. **And if we don't**, we are not really a licensee and we will be excluded." Hr'g Tr. at 68:2-4, 11-13 (July 12, 2013).

While ZTE and Nokia expressly admit the contingent nature of their claims, Huawei now equivocates. In previous court-submitted pleadings subject to Rule 11, Huawei has stated that its willingness to pay FRAND royalties is contingent on whether each patent is valid, infringed, and essential. For example, in Huawei's prior counterclaims filed in this action in March 2013, Huawei counted itself among "parties willing to license its patents under FRAND license terms **with respect to valid and essential patents they use,** as Huawei is willing to do". D.I. (13-00008) #35 ¶ 2. Now, in its amended counterclaims, Huawei has made the following change, omitting the text in strikethrough: "parties willing to agree to license its patents under FRAND license terms [~~with respect to valid and essential patents they use~~], as Huawei is willing to do." Huawei Countercl., ¶ 2. Having previously revealed its position, Huawei cannot credibly withdraw it now simply by striking a statement that it averred to be true a mere five months ago. Even if one were to credit Huawei with a change of heart about whether it is actually willing to pay FRAND compensation without contingencies for infringement, validity, and essentiality, Huawei's waffling only raises further issues about whether Huawei will change its position again should it become expedient to do so.

Defendants further seek to sidestep the contingency of patent essentiality by asserting that they want a "FRAND rate" for any "declared essential" patents, assuming this would do away with the necessity of determining whether each one of the hundreds of patents at issue in their counterclaims is in fact Essential. But InterDigital has not "declared as essential" any patents to ETSI; the ETSI declarations state only that patents "may be or may become" Essential. 800 ID at 420; *see also* ZTE Countercl., Exs. 43-44. Indeed, as to at least two of the specific patents

subject to the DJ counterclaims (the '970 and the '244 patents), InterDigital has not even disclosed them as potentially Essential to standards used by the accused products, and does not contend in this case or otherwise that they are Essential to 3G or 4G wireless standards.  Thus, the existence of FRAND obligations is contingent on findings of Essentiality.  *See In re Innovatio IP Ventures LLC Patent Litig.*, No. 11-C-9308, 2013 U.S. Dist. LEXIS 105554 (N.D. Ill. Jul. 26, 2013) (party asserting entitlement to RAND license bears burden to prove essentiality in order to demonstrate applicability of RAND commitments, and deciding essentiality under IEEE definition for 23 patents). The counterclaims here are based on a number of contingencies, and are not sufficiently real and substantial to warrant the issuance of a declaratory judgment.

### B.      The Counterclaims Do Not Satisfy the Second Prong

Under the second prong of the test, the declaratory judgment must be "sufficiently conclusive to define and clarify the legal rights or relations of the parties."  *Step-Saver*, 912 F.2d at 648 (finding that because a declaratory judgment decree would be based on a contingency, "the legal rights … [and] status of the parties would not change" and judgment would be an "exercise of futility").   The judgments Defendants seek would be far from conclusive. Defendants are seeking declaratory judgments of "FRAND rates" that would hypothetically be applicable to a license, should they choose to accept it.  Tellingly, when ZTE and Huawei moved to stay the 868 Investigation in favor of this case, they characterized a judgment of a "FRAND rate" that would be issued by this Court as simply an "opportunity to accept a FRAND license." D.I. (13-00008) #38-10 at 7, 13.  This necessarily implies an "opportunity to decline" a FRAND license should Defendants prefer instead to challenge infringement, validity, or essentiality.

Unless Defendants should choose to not to contest infringement, validity, and essentiality, the "FRAND rate" they seek would remain a hypothetical, advisory opinion.  Nokia,

Huawei and ZTE have not framed their counterclaims as declaratory judgments to declare the rights of parties in a bilateral, mutual contract, pursuant to which Defendants have payment obligations to InterDigital.  Rather, they claim InterDigital has a "one-way" obligation to offer them a license on FRAND terms, that they can either accept or reject as they see fit.  This would not lead to a conclusive determination sufficient for declaratory judgment jurisdiction.  *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416931, at *1 (W.D. Wis. Nov. 2, 2012) (dismissing claims to set a FRAND rate, as it is not "appropriate for a court to undertake the complex task of determining a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties.").  When negotiating parties cannot agree on the fundamental terms of a proposed contract, courts are not in the best position to step in and tell the parties what they ought to agree to.  *Id.* at *3 (holding that parties have employees with expertise in licensing "whose job it is to negotiate these types of licenses and who are in a much better position than the court to determine a FRAND rate.").

Defendants have demonstrated by their hedging and their changing positions that there is a real danger that, even if the Court entertained their counterclaims and were to undertake a complex and time-consuming rate-setting proceeding, Defendants will at the end of the process deny the applicability of any judgment unless and until each patent is found valid and infringed, or will otherwise assert newly discovered contingencies to excuse payment.[4]  Courts have thus dismissed or stayed claims like Defendants' precisely because they will not resolve anything in a definitive manner.  *Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2009 WL

---

[4] Defendants have claimed they agree the court's judgment "would be binding" on them.  It is of course generally true that *res judicata* applies to district court judgments, if that is what they mean to convey by this statement.  But that does not answer the question of whether there is a sufficiently ripe controversy to allow the court to reach a judgment that would be subject to *res judicata* in the first instance.

1509103, at*1 (Del. Super. Ct. May 22, 2009)*; (staying claims to set a FRAND rate when party continually changed position about whether it would pay such royalties and not seek recoupment); *Apple*, 2012 WL 5416931 (dismissing Apple claims for FRAND rate determination where Apple reserved right not to pay determined rate and argued instead that Motorola was simply required to offer a FRAND rate that Apple could decline).

Indeed, the court in *Apple v. Motorola* noted the lack of definitiveness in the proposed judgment stemming from the fact that Apple "was only volunteering to pay the rate," so that if Apple did not pay, it would "leav[e] Motorola without a mechanism for obtaining compensation from Apple for the use of its patents except by filing infringement suits." *Apple*, 2012 WL 7989412, at *3 (W.D. Wis. Nov. 8, 2012).  Similarly, earlier this month, another court declined to determine a FRAND rate for a portfolio of allegedly standards-essential patents because "Defendants wavered on whether they would agree to actually *pay* the RAND rate determined by the Court." *Ericsson, Inc. v. D-Link Sys., Inc.*, No. 10-CV-0473, 2013 U.S. Dist. LEXIS 110585, at *74-75 (E.D. Tex. Aug. 6, 2013) (emphasis in original). The court further found that:

> In essence, Defendants asked the Court to determine Ericsson's initial RAND offer, but they refused to make any assurances they would accept such an offer. This would have amounted to nothing more than an advisory opinion as to Ericsson's initial RAND license offer.  Defendants cannot ask the Court to determine a RAND rate but refuse to be bound by it.

*Id*. at *75 (citations omitted).  Thus, because the defendants in *Ericsson* informed the court post-trial that they would only agree to be bound by determinations as to the patents asserted in the case, the court declined to issue any broader determination about a generally applicable "FRAND rate" for Ericsson's allegedly standards-essential patents.  *Id*.  So too here, the lack of conclusivity of any judgment demonstrates that the second prong of the ripeness test is not met, and the Court should not engage in a futile exercise that would result in a mere advisory opinion.

### C.      The Counterclaims Do Not Satisfy the Third Prong

Under the third prong, the declaratory judgment must have utility – meaning "the court is convinced that [by its action] a useful purpose will be served."  *Step-Saver*, 912 F.2d at 649 (citation omitted).  As noted above, a declaratory judgment here will not usefully clarify the legal relationship between the parties.

Defendants have previously suggested that there would be utility in their requested declaratory judgments because they have now been sued in several actions and the DJ claims would purportedly end the parties' dispute.  However, the DJ claims have been framed by Defendants to address only a subset of the parties' disputes.  Defendants' requests are directed only to U.S. patents, even though InterDigital has a global patent portfolio.  The declaratory judgments are also directed to standards-essential patents, but Defendants do not define which of InterDigital's thousands of patents should qualify as SEPs.   Even if Defendants were to provide a list of the hundreds of alleged SEPs on which they seek a declaratory judgment, it is apparent that the parties disagree about which patents fall into that category, at a minimum because Defendants seek determination of a FRAND license for non-essential patents such as the '970 and '244 patents (and undoubtedly others).  Non-essential patents are not subject to FRAND commitments under any applicable SSO policy, and therefore would remain a basis of dispute even if the Court were to otherwise entertain Defendants' DJ claims.

Moreover, the amended counterclaims -- which include details about the many years of negotiation history between InterDigital and Defendants -- show that InterDigital has been making concerted efforts to license its patents to Defendants.  The ALJ in the 800 Investigation reviewed the lengthy negotiation history and determined that InterDigital violated no FRAND obligations, and negotiated in good faith with Respondents.  In light of this additional factual

background, it is even clearer that InterDigital was and is willing to license its patents to Defendants, and therefore there is no need to resort to DJ claims.  Indeed, the negotiation history demonstrates that Defendants have taken unreasonable positions to obstruct and delay negotiations.  ███████████████████████████████████████████████████████████████

█████████████████████████████████████ Had they negotiated in good faith, Defendants would have obtained licenses long ago.  Moreover, because there is a long history of negotiations with all Defendants, the Court will be able to review the history in the context of the affirmative defenses and determine whether InterDigital's offers were consistent with FRAND obligations ████████████████████████████ This is not a situation where Defendants have alleged (or could allege) that there has been a complete refusal to license, such that "FRAND terms" would need to be determined *de novo*.

Courts have also recognized that other alternative forums may represent the best mechanism by which full resolution of the parties' disputes may be accomplished.  As the *Apple* court noted in dismissing the claims for a FRAND rate determination:

> Motorola suggested that the parties engage in binding arbitration to resolve their dispute. If the parties really wish to resolve this licensing dispute, this is the obvious solution. . . . [The parties] would finish the process with an agreement that would determine once and for all what amount of licensing fees Apple is required to pay Motorola. In the end, this seems to be the best way, if not the only way, for the parties to negotiate a rate that takes into account the many elements of a licensing fee that are not part of this case but are critical to the determination of a fair, reasonable and non-discriminatory rate.

*Apple*, 2012 WL 7989412, at *6.  █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████ The declaratory judgment claims asserted by Defendants are, by comparison, too contingent and incomplete to be of any significant utility, and therefore the Court should reject them.

## II.   EVEN IF ARTICLE III JURISDICTION EXISTS, THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION AS A DISCRETIONARY MATTER

Under the Declaratory Judgment Act, a court's exercise of jurisdiction is not mandatory. 28 U.S.C. § 2201(a) (court "may declare" rights of parties). Thus, "[e]ven when declaratory actions are ripe, the Act only gives a court the *power* to make a declaration  . . . ; it does not *require* that the court exercise that power." *Step-Saver*, 912 F.3d at 646-47. Courts generally consider two criteria in determining whether to exercise their discretionary powers: "(1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) whether the judgment will terminate and afford relief from uncertainty, insecurity and controversy giving rise to the proceeding." *Akzona Inc. v. E.I. du Pont de Nemours & Co*., 662 F. Supp. 603, 617 (D. Del. 1987). "If the Court is of the opinion that the action will not serve a useful purpose, or that it is otherwise undesirable, then it should refuse to proceed." *Id*. (quoting 6A James W. Moore et al., Moore's Federal Practice, ¶ 57.20 (2d ed. 1979)). Here, as explained above, the requested declaratory judgments are illusory and would serve no useful purpose. *Apple,* 2012 WL 5943791, at *3 (W.D. Wis. Nov. 28, 2012) (court dismissed Apple's claims for declaratory relief because "decision whether to grant declaratory relief is discretionary, 28 U.S.C. § 2201(a), and it is inappropriate to issue declaratory judgment if 'such a judgment would have no practical effect.'").

In addition, in exercising its discretion, the Court should consider the "enormous and possibly unjustifiable burden on the judiciary's resources" that the counterclaims would impose. *Apple*, 2012 WL 5416931, at *3. Defendants rely primarily on the *Microsoft v. Motorola* case in

the Western District of Washington, which appears to be the only U.S. court that has decided to

hold a trial for determining a "FRAND range" and "FRAND rate" for alleged SEPs.  However,

putting aside the other ways in which that decision is inapposite,[5] in that case, Judge Robart

undertook to determine a "FRAND royalty range" and "FRAND royalty rate" for a total of only

**6 patent families** for one standard, and **11 patents** for a second standard.  *Microsoft Corp. v.*

*Motorola, Inc.*, No. C10-1823-JLR, 2013 WL 2111217, at *27, *55 (W.D. Wash. Apr. 25, 2013).

That case involved a week-long bench trial with testimony from 18 witnesses, analysis and

expert testimony regarding each patent, and resulted in a 207-page opinion.[6]  *Id.* at *3.  Here,

Defendants are seeking determination of "FRAND terms" for **hundreds** of patents:  something

on the order of 500 patents for WCDMA/LTE alone; perhaps hundreds more for CDMA2000;

and an undetermined additional number for any other standards that Defendants may assert.

Adjudication of these claims in the manner Defendants propose (*i.e.*, under the framework of

Judge Robart as Defendants view it) would require an unprecedented amount of judicial and

party resources – and, as discussed above, would not even result in a conclusive, non-advisory

decision.  The Court should exercise its discretion to decline jurisdiction over Defendants'

declaratory judgment claims.

## CONCLUSION

InterDigital respectfully requests that the Court dismiss Counts III and IV of ZTE's and

Huawei's counterclaims, and Counts III and VIII of Nokia's counterclaims.

---

[5] For example, this case did not involve ETSI or French law issues, and Motorola had no substantial licensing history for the standards at issue, unlike InterDigital here.

[6] Even this decision was not dispositive, but was simply designed to aid the jury in a *second* trial, currently ongoing, in deciding whether FRAND obligations were breached.  *Microsoft*, 2013 WL 2111217, at *3.

PROCTOR HEYMAN LLP

*/s/ Neal C. Belgam*

Neal C. Belgam (# 2721)
E-mail: nbelgam@proctorheyman.com
Melissa N. Donimirski (# 4701)
E-mail: mdonimirski@proctorheyman.com
300 Delaware Avenue, Suite 200
Wilmington, DE  19801
(302) 472-7300
Counsel for Plaintiffs InterDigital Communications,
Inc., InterDigital Technology Corporation, IPR
Licensing, Inc., and InterDigital Holdings, Inc.

OF COUNSEL:

LATHAM & WATKINS LLP
Ron E. Shulman
E-mail: Ron.Shulman@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

LATHAM & WATKINS LLP
Maximilian A. Grant
E-mail: Max.Grant@lw.com
Bert C. Reiser
E-mail: Bert.Reiser@lw.com
555 Eleventh Street, N.W., Ste. 1000
Washington, DC  20004
(202) 637-2200

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Original Filing Date:  August 30, 2013

Redacted Filing Date:  September 6, 2013